# United States Court of Appeals
## For the First Circuit

No. 03-2181

UNITED STATES OF AMERICA,

Appellee,

v.

PETER MCLAUGHLIN,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Selya, Circuit Judge,

Coffin and Cyr, Senior Circuit Judges.

Thomas F. Hallett on brief for appellant.
Paula D. Silsby, United States Attorney, and F. Mark Terison,
Senior Litigation Counsel, on brief for appellee.

August 6, 2004

**SELYA**, **Circuit Judge**. On December 11, 2002, a federal grand jury superseded a single-count indictment handed up some four months earlier and charged defendant-appellant Peter McLaughlin, inter alios, with three counts involving drug trafficking. See 21 U.S.C. §§ 841(a)(1), 846; 18 U.S.C. § 2. On March 10, 2003, while McLaughlin was free on pretrial release, local authorities arrested him for operating a motor vehicle under the influence of intoxicating liquor. See Me. Rev. Stat. Ann. tit. 29, § 2411. The next day, he was again arrested and taken into state custody, this time for possession of heroin. See id. tit. 17-A, § 1107-a.

McLaughlin reached an agreement with the federal prosecutor on April 4, 2003. As a result, he pleaded guilty on that date to a single-count information that charged him with a one-time violation of 21 U.S.C. § 841(a)(1). At the disposition hearing, the district court, troubled by McLaughlin's misbehavior while on pretrial release, refused to reduce his offense level for acceptance of responsibility. See USSG §3E1.1(a) (providing that a defendant's offense level may be reduced by two levels if "the defendant clearly demonstrates acceptance of responsibility for his offense"). The court then imposed a 35-month incarcerative sentence and, pursuant to the plea agreement, dismissed the superseding indictment vis-à-vis McLaughlin.

McLaughlin's appeal focuses on a single ruling: the denial of a downward adjustment for acceptance of responsibility.

An inquiry into whether a defendant has accepted responsibility is typically a fact-dominated enterprise, and we ordinarily review the sentencing court's determination of such an issue for clear error. United States v. Talladino, 38 F.3d 1255, 1263 (1st Cir. 1994); United States v. Royer, 895 F.2d 28, 29 (1st Cir. 1990). When the question involves an interpretation of the sentencing guidelines, however, we employ de novo review. See Talladino, 38 F.3d at 1263 ("[Q]uestions of law — including interpretive questions concerning the meaning and scope of the sentencing guidelines — engender de novo review."). The issue on appeal has two dimensions. It requires us first to determine how section 3E1.1(a) operates (a matter that entails plenary review)[1] and then to determine the supportability of the district court's factfinding (a matter that entails review only for clear error).

We begin with the law-dominated dimension of McLaughlin's argument. He asseverates that he accepted responsibility on April 4, 2003 (when he tendered his guilty plea to a lesser charge); that he was fully compliant with the law between that date and the date

---

[1]The Supreme Court has stated that in cases in which the legal question is a "minor, detailed, interstitial question of sentencing law," due deference must be given to the district court's decision. Buford v. United States, 532 U.S. 59, 64 (2001). There, however, the issue sub judice involved determining whether a specific defendant's prior convictions had been consolidated for sentencing. Id. at 60. The fact-intensive nature of that inquiry dictated the use of a deferential standard of review. Id. at 66. That situation is easily distinguished from the interpretive question presented in this case.

of sentencing; and that, accordingly, the lower court should have granted him a downward adjustment for acceptance of responsibility. In his view, the court erred in factoring his prior arrests into the acceptance-of-responsibility calculus because those arrests occurred before he accepted responsibility (and, thus, had no bearing on whether his professions of remorse were authentic). In essence, then, he proposes an interpretation of section 3E1.1(a) that would forbid a sentencing court, when applying the guideline, from examining exogenous acts undertaken by a defendant before he manifests an initial acceptance of responsibility (such as by entering a guilty plea).[2]

This is a bold, but misguided, proposition. In gauging whether a defendant has accepted responsibility, a sentencing court may appropriately consider whether he has voluntarily ceased all participation in criminal activity. See USSG §3E1.1, comment. (n.1(b)). It follows that when a defendant commits new offenses after having been charged and those offenses reflect adversely on the sincerity of the defendant's avowed contrition, the sentencing court may treat the commission of those offenses as an indication that the defendant has not accepted responsibility for the original crime. United States v. Carrington, 96 F.3d 1, 9 (1st Cir. 1996). In such circumstances, a sentencing court lawfully may "decline to

---

[2]By "exogenous," we mean conduct not directly related to the offense(s) charged in the pending federal case.

award a reduction for acceptance of responsibility on that ground alone." Id.

McLaughlin seeks to carve out an exception to this principle for exogenous pre-plea offenses. Rather than acknowledging the radical nature of this exception, he strives to portray it as a mainstream interpretation supported by a majority of the courts of appeals. This portrayal does not withstand scrutiny.

To be sure, McLaughlin marshals a long list of cases to buttress his proposition. See, e.g., United States v. Prince, 204 F.3d 1021 (10th Cir. 2000); United States v. Ngo, 132 F.3d 1231 (8th Cir. 1997); United States v. Byrd, 76 F.3d 194 (8th Cir. 1996); United States v. McDonald, 22 F.3d 139 (7th Cir. 1994); United States v. Pace, 17 F.3d 341 (11th Cir. 1994); United States v. Woods, 927 F.2d 735 (2d Cir. 1991); United States v. Cooper, 912 F.2d 344 (9th Cir. 1990); United States v. Scroggins, 880 F.2d 1204 (11th Cir. 1989). Fairly read, these decisions do not help McLaughlin; they merely stand for the inverse of his proposition. In each of them, the defendant had accepted responsibility and then committed a subsequent offense that the district court found sufficient to undermine the sincerity of the professed acceptance of responsibility. See, e.g., Prince, 204 F.3d at 1023-24; Ngo, 132 F.3d at 1233; Byrd, 76 F.3d at 196-97; McDonald, 22 F.3d at 144; Pace, 17 F.3d at 343; Woods, 927 F.2d at 736; Cooper, 912 F.2d

-5-

at 348; <u>Scroggins</u>, 880 F.2d at 1215-16.  That reasoning tells us nothing about whether (or to what extent) acts committed <u>before</u> a defendant accepts responsibility should be taken into consideration in constructing the acceptance-of-responsibility calculus.[3]

McLaughlin places especially heavy reliance on the decision in <u>United States</u> v. <u>Tilford</u>, 224 F.3d 865 (6th Cir. 2000), in which the Sixth Circuit, on de novo review, vacated a district court's refusal to award an acceptance-of-responsibility reduction based upon the defendant's post-indictment but pre-plea behavior. A close reading of this decision reveals that the court of appeals did not purpose to establish a per se rule anent the timing of an offender's exogenous acts, but, rather, required that "there be some conduct that the court can find is inconsistent with that <u>specific</u> acceptance of responsibility [betokened by] the guilty plea."  <u>Id.</u> at 868 (quoting <u>United States</u> v. <u>Jeter</u>, 191 F.3d 637, 641 (6th Cir. 1999)) (emphasis in <u>Tilford</u>).  After applying this requirement to Tilford's situation, the Sixth Circuit determined that the relevant time period <u>in that case</u> was the period between the guilty plea and the disposition hearing.  <u>Id.</u>  To the extent (if at all) that <u>Tilford</u> establishes a per se temporal rule that

_____

[3]Indeed, in one of the cases cited by McLaughlin, the Eleventh Circuit, although not specifically holding that the sentencing judge may look to the defendant's behavior before his acceptance of responsibility, upheld a denial of a section 3E1.1(a) credit when the defendant had engaged in illegal behavior while on pretrial release <u>before</u> entering a guilty plea.  <u>See</u> <u>Scroggins</u>, 880 F.2d at 1216.

debars a sentencing court from examining any pre-plea behavior in the course of gauging the genuineness of an accused's acceptance of responsibility, we deem it inconsistent with Carrington, 96 F.3d at 9, and decline to follow it.[4]

Having found McLaughlin's string of citations unpersuasive, we take a fresh look at the issue that he raises. A defendant is entitled to a two-level credit if he "clearly demonstrates acceptance of responsibility for his offense." USSG §3E1.1(a). The burden is on the defendant to show an entitlement to the reduction. See United States v. Franky-Ortiz, 230 F.3d 405, 408 (1st Cir. 2000); Royer, 895 F.2d at 29-30. Although the entry of a guilty plea prior to trial is impressive evidence of acceptance of responsibility, it does not automatically entitle a defendant to the credit. See United States v. Bradley, 917 F.2d 601, 606 (1st Cir. 1990); see also USSG §3E1.1, comment. (n.3). The sentencing court must still find that the defendant exhibits "candor and authentic remorse" as opposed to mouthing "a pat recital of the vocabulary of contrition." Royer, 895 F.2d at 30.

The Sentencing Commission has provided guidance for courts charged with determining whether heartfelt remorse exists. See USSG §3E1.1, comment. (n.1) (limning a non-exclusive list of

---

[4]The Sixth Circuit seems to be divided on the correct interpretation of Tilford. See United States v. Hakley, ___ Fed. Appx. __ (6th Cir. 2004); id. at __ (Suhrheinrich, J., dissenting).

factors that courts may consider in that regard). One factor is whether the defendant "voluntarily has terminated or withdrawn from criminal conduct or associations." Id. (n.1(b)). There is nothing in this application note or elsewhere in the guidelines to suggest a temporal limit on this factor. Moreover, the non-exclusivity of the list suggests that the sentencing court should look to all relevant data to reach a just result. For these reasons, we agree with the Fifth Circuit that the commentary to section 3E1.1 fairly implies that "a defendant's failure to comply with conditions of a bond [can] be highly relevant to assessing the sincerity of the defendant's contrition." United States v. Hooton, 942 F.2d 878, 883 (5th Cir. 1991).

On policy grounds, the temporal cut-off proposed by McLaughlin makes very little sense. Timely acceptances of responsibility already are rewarded by a provision that allows for an additional one-level reduction if the defendant "(1) timely provid[es] complete information to the government concerning his own involvement in the offense; or (2) timely notif[ies] authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently." USSG §3E1.1(b). It would be perverse to encourage a practice whereby a defendant, released on bail, would be benefitted by waiting as long as possible before accepting responsibility. Yet that is what

would happen if McLaughlin's argument were to prevail. Deferring a guilty plea would work to a defendant's advantage by shrinking the universe of conduct that could be counted against him in the acceptance-of-responsibility calculus. In other words, the longer the defendant postponed the entering of a guilty plea, the less the exogenous criminal conduct that the sentencing court would be able to consider. And this would be so regardless of the heinousness of the exogenous crimes or the lack of contrition that they might betoken. The guidelines ought to be construed in a commonsense manner, and we are not inclined to impute to the Sentencing Commission so counter-intuitive a design.

We note, too, that courts regularly consider a defendant's <u>favorable</u> pre-plea conduct in granting downward adjustments for acceptance of responsibility. <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Sklar</u>, 920 F.2d 107, 115-16 (1st Cir. 1990); <u>United States</u> v. <u>Wilkes</u>, 130 F. Supp. 2d 222, 240 (D. Mass. 2001). Most streets run two ways, and McLaughlin has offered no sensible reason why a defendant's praiseworthy pre-plea conduct should be figured into the calculus but his blameworthy pre-plea conduct should not.

To sum up, we conclude that McLaughlin's cramped interpretation of the acceptance-of-responsibility guideline is incorrect. We reject that interpretation and hold that the district court had the right to consider McLaughlin's exogenous

pre-plea conduct in denying him an acceptance-of-responsibility discount.

Anticipating the possibility of such a holding, McLaughlin makes an alternative argument. This argument is premised on two facts: (1) that he pleaded to an information that did not exist until around the time of the plea agreement, and (2) that the exogenous crimes he committed while on pretrial release antedated the filing of the information. Building on this foundation, he posits that those crimes could not be used to justify the denial of an acceptance-of-responsibility adjustment. His premise is accurate, but the conclusion that he draws from it is not.

As a general matter, it is true that courts cannot go back limitlessly in time in assessing acceptance of responsibility. See United States v. Ceccarani, 98 F.3d 126, 130 (3d Cir. 1996); McDonald, 22 F.3d at 141. Normally, the lodging of a federal charge marks the commencement of the relevant time frame. Tilford, 224 F.3d 868 (explaining that a "defendant must be on notice that the federal government has an interest in his or her affairs before the acceptance-of-responsibility guideline comes into play").[5] The rationale for using this milestone is that the clock should start

---

[5]Given the Tilford court's wording of this rule, it is arguable that knowledge of a federal investigation may be enough to start the clock. For present purposes, we need not explore that possibility.

to run no later than the time that the defendant has been put on notice, by the filing of a formal charge, that federal prosecutors have taken an interest in his conduct.

McLaughlin's argument founders on these shoals. From and after the date of the original indictment, McLaughlin knew full well that the Justice Department had an interest in the conduct underlying the count of conviction (i.e., his drug trafficking in April of 2002). He nevertheless committed other crimes while on pretrial release for the federal charge. Tellingly, the very same conduct supplied the basis both for the charges contained in the indictment and for the lone count of the information that superseded it. Where, as here, the same conduct is the basis of both an original and a superseding charge, distinguishing between the two for acceptance-of-responsibility purposes would mindlessly exalt form over substance. Under these circumstances, McLaughlin's entitlement to an acceptance-of-responsibility discount should not depend upon which charging document was in force when he entered his plea.

Our conclusion that the district court properly interpreted section 3E1.1(a) as ceding it discretion to consider McLaughlin's exogenous pre-plea arrests brings us to the second half of our bifurcated inquiry. This exercise need not occupy us for long.

It is uncontroverted that while on pretrial release, McLaughlin drove under the influence of alcohol and possessed heroin. Pretrial release is far from automatic in federal drug-trafficking cases, and by engaging in the conduct described above, McLaughlin broke his promise to behave in a law-abiding manner while free on bond. By like token, those actions impugned the district court's authority. Thus, it was not clearly erroneous for the court to conclude that the commission of these new crimes belied the genuineness of any self-serving claim of remorse. See, e.g., Ceccarani, 98 F.3d at 129-30 (holding that post-offense conduct can shed a bright light on the sincerity of a defendant's professed remorse); United States v. Kirkland, 28 F.3d 49, 50-51 (7th Cir. 1994) (similar); United States v. Kidd, 12 F.3d 30, 34 (4th Cir. 1993) (similar).

To say more on this point would be supererogatory. Keeping in mind that the defendant must carry the devoir of persuasion as to whether he deserves a downward adjustment for acceptance of responsibility, Royer, 895 F.2d at 29-30, we find no hint of error in the district court's determination that McLaughlin fell short. Indeed, this case is a paradigmatic example of the tenet that a sentencing court properly may deny a reduction for acceptance of responsibility if a defendant engages in further criminal conduct while on pretrial release. See Carrington, 96 F.3d at 9; see also United States v. O'Neil, 936 F.2d 599, 600 (1st

-12-

Cir. 1991); see generally USSG §3E1.1, comment. (n.1(b)) (noting that appropriate considerations in making the acceptance of responsibility determination include a defendant's "voluntary termination or withdrawal from criminal conduct").

We need go no further. After carefully reviewing the sentencing guidelines, the commentary, the parties' briefs, and the most analogous precedents, we conclude that a sentencing court has the discretion, in an appropriate case, to consider a defendant's conduct at any point after an indictment is handed up or an information is filed. Here, the sentencing court appropriately mulled, and sensibly acted upon, that type of evidence. The record bears out the court's determination that McLaughlin engaged in continued criminal conduct bespeaking a lack of sincere contrition. Consequently, we uphold the court's refusal to reduce McLaughlin's sentence for acceptance of responsibility.

**Affirmed**.