**UNITED STATES of America**

v.

**Anthony Wayne ROBINSON**

**No. CR–04–56–B–W.**

United States District Court, D. Maine.

April 4, 2005.

---

Jeffrey M. Silverstein, Russell, Silver and Silverstein, Bangor, ME, for Anthony Wayne Robinson (1), Defendant.

James L. McCarthy, Office of the U.S. Attorney, District of Maine, Bangor, ME, for USA, Plaintiff.

### SENTENCING ORDER

WOODCOCK, District Judge.

Having pleaded guilty to a violation of 18 U.S.C. § 2262, Interstate Violation of Protection Order, the Defendant, Anthony Wayne Robinson, seeks to receive a reduction under U.S.S.G. § 3E1.1 for acceptance of responsibility, and the Government seeks enhancements under U.S.S.G. § 2A6.2(b)(1)(A) and (D) for violation of a protection order and a pattern of harassing activity involving the same victim. Based on Mr. Robinson's post-plea statements and conduct, this Court DENIES acceptance, and based on his pre- and post-plea statements and conduct, this Court ORDERS an enhancement under U.S.S.G. § 2A6.2(b)(1)(D).

### I. STATEMENT OF FACTS

On June 24, 2004, a Complaint (Docket # 3) issued against Mr. Robinson, charging Interstate Violation of Protection Order, a violation of 18 U.S.C. § 2262(a)(1) and (b)(5).[1] Mr. Robinson was arrested the same day and has remained detained since. On July 14, 2004, Mr. Robinson was indicted (Docket # 14) on the same charge, and on August 31, 2004, he pleaded guilty (Docket # 23). The Presentence Investigative Report was completed on December 6, 2004 and finally revised on January 6, 2005. At the presentence conference, counsel asked to submit memoranda on: 1) whether application of U.S.S.G. § 2A6.2(b)(1)(A), which authorizes a two-level increase if the offense involves the violation of a court protection order, would constitute impermissible double counting; 2) whether a two-level increase under U.S.S.G. § 2A6.2(b)(1)(D), which addresses a pattern of activity involving stalking, threatening, harassing, or assaulting the same victim, ought to be applied; and, 3) whether Mr. Robinson should be accorded acceptance under U.S.S.G. § 3E1.1. This order is issued in anticipation of Mr. Robinson's sentencing, scheduled for April 6, 2005.

On August 31, 2004, during the Rule 11 hearing, Mr. Robinson admitted the facts

---

1.  18 U.S.C. § 2262(b)(5) is a penalty provision, which establishes a maximum period of incarceration of five years.

set forth in the Revised Prosecution Version (Docket # 22). The Revised Prosecution Version establishes that, on May 28, 2004, the Pierce County District Court for the State of Washington issued an order prohibiting contact as a condition of sentence against Mr. Robinson (Docket # 27, Ex. B).[2] The order continued until April 13, 2006 and provided that Mr. Robinson was to have "no contact, directly or indirectly, in person, in writing or by telephone, personally or through any other person with Rebecca Robinson." The order allowed third party contact for child visitation purposes only. The order contains the following warnings:

> **WARNINGS TO THE DEFENDANT: Violation of the provisions of this order with actual notice of its terms is a criminal offense under chapter 10.99 RCW, and chapter 26.50 RCW and will subject a violator to arrest.** If the violation of the order prohibiting contact involves travel across a state line ..., you may be subject to criminal prosecution in federal court under 18 U.S.C. sections 2261, 2261A, or 2262.
>
> .     .     .     .     .
>
> **YOU CAN BE ARRESTED EVEN IF THE PERSON OR PERSONS WHO OBTAINED [THE] ORDER INVITE OR ALLOW YOU TO VIOLATE THE ORDER'S PROHIBITIONS.** You have the sole responsibility to avoid or refrain from violating the order's provisions. Only the court can change the order upon written application.

This Order was signed by the Judge and by Mr. Robinson.

On June 16, 2004, Detective Steve McFarland received a phone call from a man identifying himself as Charles Brewer from the state of Washington. Mr. Brewer informed Detective McFarland that his daughter, Rebecca Robinson, was married to Mr. Robinson and that he was violating a state of Washington protection order. As a result of an investigation, Mr. Robinson was found in Maine with Ms. Robinson, and he was arrested. After his arrest, Mr. Robinson admitted to having prior convictions for domestic assault in the state of Washington. He explained, however, that an attorney in Washington had advised him the protection order could be enforced only in Washington, and Ms. Robinson attempted to have the order revoked, but was unsuccessful. To get a new start, they had left Washington for Maine after he finished a 90-day jail sentence for domestic assault. Mr. Robinson said his wife voluntarily left Washington with him.

The Presentence Investigation Report calculated Mr. Robinson's base offense level at 18, U.S.S.G. § 2A6.2, recommended no upward adjustments, but recommended downward adjustment for acceptance of responsibility, resulting in a total offense level of 15. With a criminal history category of V, the guideline sentence range in the Presentence Investigation Report was 37–46 months. On January 20, 2005, the Government filed its Memorandum in Aid of Sentencing, arguing that Mr. Robinson's base offense level should be increased four levels to 22 under U.S.S.G. § 2A6.2(b)(1)(A) and (D).

---

2. The Government's Memorandum in Aid of Sentencing (Docket # 27) references an earlier domestic violence no-contact order against Mr. Robinson issued by the Lakewood (Washington) Municipal Court on April 2, 2004, remaining in effect until April 2, 2006. The Revised Prosecution Version, however, made no reference to this earlier order, and it is not directly mentioned in the Presentence Investigation Report. At this stage, this Court cannot consider as evidence the copy of the April 2, 2004 order attached as Exhibit C to the Government's Memorandum in Aid of Sentencing. However, this Sentencing Order is written on the assumption the Government could establish the admissibility of the April 2, 2004 order.

After he entered his guilty plea and during his continuing custody, Mr. Robinson has written three letters, which by envelope are addressed to an adult son from his first marriage, living in Maine.[3] The outside of each envelope specified they were intended only for his son. Two of the letters written to his son, however, contained directives to deliver messages to Ms. Robinson[4] as well as direct and implied threats against her.[5] The third letter begins, "Dear Baby Girl," and is written to Ms. Robinson. In the letter, he enclosed another letter he had written, but not sent, to the state of Maine Department of Human Services (DHS) concerning their four year-old daughter. He explained to Ms. Robinson that Maine DHS was "willing to may be work something out with me if I would help them and verifi [sic] some of your family's accusations that they have made against you!!" He continued, "All I had to do was back up some of your low life, rapo [sic] family's coments [sic] about you and my family would almost certainly get [our daughter] and not you!!" He told her that although he "wanted to make [her] feel the pain [she has] caused [him]," he would not send the six-page accusatory letter to DHS, because he still loved her.

## II. DISCUSSION

### A. Whether Mr. Robinson Is Entitled To A Three–Level Reduction for Acceptance of Responsibility Under U.S.S.G. § 3E1.1

■ The Presentence Investigation Report recommended that Mr. Robinson receive a three-level reduction for acceptance of responsibility. The Report noted Mr. Robinson had entered a timely plea of guilty, allowing the Government to efficiently allocate its resources. The Report also stated, however, that Mr. Robinson justified his actions by explaining that his father-in-law Charles Brewer, who lives in the state of Washington, was constantly "trying to get [him] locked up." He explained that even before his April 2004 incarceration, he and his wife had decided to return to Maine, where they were originally from. Before leaving Washington, Mr. Robinson said he had contacted an attorney, who informed him the protective order was valid only in the state of Washington.

■ The burden to demonstrate by a preponderance of the evidence eligibility for a § 3E1.1 reduction rests with Mr. Robinson. *See United States v. Denis,* 297 F.3d 25, 32 (1st Cir.2002). Mr. Robinson's rationalizations for his illegal conduct raise questions as to whether he had "clearly demonstrate[d] acceptance of responsibility" and had engaged in "conduct ... inconsistent with ... acceptance of responsibility." U.S.S.G. § 3E1.1, Background, Application Note 3. His subsequent direct and indirect communications with Ms. Robinson lay any doubts to rest. Mr. Robinson has continued to violate the protection order even while incarcerated and awaiting sentence for violating the order. Moreover, the violations concern the same victim.

---

**3.** These letters came to this Court's attention through the Probation Office. This Court is considering the contents of the letters, subject to any objections Mr. Robinson may have to their admissibility.

**4.** For example, in the letter postmarked November 12, 2004, Mr. Robinson told his son to tell Ms. Robinson that "me and all my family have decided that the fucking Brewer's [sic] are not going to take anymore from me or screw me over anymore!! That we are all ready for a fight!!"

**5.** The letter postmarked December 28, 2004 stated: "The lieing [sic], coniving [sic], back stabbing, unloyal, unfaithful bitch is going down with me!!"

In *United States v. McLaughlin,* 378 F.3d 35 (1st Cir.2004), the First Circuit explained that in "gauging whether a defendant has accepted responsibility, a sentencing court may appropriately consider whether he has voluntarily ceased all participation in criminal activity." *McLaughlin,* 378 F.3d at 38. More specifically, the court may consider whether the defendant has committed "new offenses after having been charged and those offenses reflect adversely on the sincerity of the defendant's avowed contrition." *Id.* Although Mr. Robinson has not been charged or convicted of new violations of the protection order, this Court finds, if the letters are admitted into evidence, his post-plea conduct establishes it is more likely than not he has continued to violate the protection order, and he is not entitled to the three-level reduction for acceptance of responsibility. *See* U.S.S.G. § 3E1.1, Application Note(1)(b); *McLaughlin,* 378 F.3d at 38–40. The result is an adjusted offense level of 18 and a guideline range of sentence from 51–63 months.[6]

## B. Whether This Court Should Apply the Enhancements In U.S.S.G. § 2A6.2(b)(1)

■ Mr. Robinson was indicted for and convicted of violating 18 U.S.C. § 2262(a)(1):

A person who travels in interstate . . . commerce . . . with the intent to engage in conduct that violates the portion of a protection order that prohibits or provides protection against violence, threats, or harassment against, contact or communication with, or physical proximity to, another person, or that would violate such a portion of a protection order in the jurisdiction in which the

order was issue, and subsequently engages in such conduct, shall be punished as provided in subsection (b).

The Guidelines provide that § 2A6.2 is applicable to violations of 18 U.S.C. § 2262. *See* U.S.S.G. Appendix A. Guideline § 2A6.2(a) establishes a base offense level of 18 for violation of 18 U.S.C. § 2262. However, § 2A6.2(b) imposes a two-level enhancement if the offense involved one of four "aggravating factors," including violation of a court protection order or a pattern of activity involving the same victim, and a four-level enhancement if two or more of the aggravating factors are found.[7] If one enhancement were found, the offense level would increase to 20, and the guideline range would equal 63–78 months. If two enhancements were found, the total offense level would increase to 22, and the guideline range would equal 77–96 months. Under either scenario, the resulting guideline range exceeds the five-year statutory maximum.

In addition to the instant offense, the Presentence Investigation Report reveals the following instances of harassing, threatening, or assaulting Ms. Robinson:

1) On April 20, 2003, as a result of a 911 call, the Lakewood, Washington police arrived at the residence of Ms. Robinson, who met the officers outside her trailer. She told the officers that Mr. Robinson had choked her, and when she attempted to call the police, he had taken the phone from her. He did give her permission to call her sister, who then called the police. Mr. Robinson was found guilty in Lakewood Municipal Court of Assault 4th Degree, Domestic Violence. He was fined $300.00 and placed on two years probation;

2) On March 31, 2004, the Pierce County, Washington police responded to a do-

6. The maximum term of imprisonment is five years under 18 U.S.C. § 2262(b)(5), and the statute would trump the guideline range, reducing the range to 51–60 months.

7. The other aggravating factors are bodily injury or possession or threatened use of a dangerous weapon. U.S.S.G. § 2A6.2(b)(1)(B), (C).

mestic violence call to the residence of Ms. Robinson. They were met by Ms. Robinson, who stated that she had become afraid during an argument with Mr. Robinson, and when she attempted to leave, he grabbed her by the arm and pulled her back, pushing her against a wooden partition near the front entrance of her house. Ms. Robinson broke away and ran toward a neighbor's home with Mr. Robinson following. A neighbor intervened, and Ms. Robinson called 911. Mr. Robinson pleaded guilty to Assault 4th Degree, Domestic Violence and Harassment. He was fined $500.00 and placed on two years probation; and,

3) Following incarceration for this offense, Mr. Robinson engaged in violations of the protection order by directly and indirectly contacting and threatening Ms. Robinson.

This pattern of behavior falls securely within the pattern of activity contemplated by Guideline § 2A6.2(b)(1)(D). The Commentary explains that a "[p]attern of activity" means "any combination of two or more separate instances of stalking, threatening, harassing, or assaulting the same victim, whether or not such conduct resulted in a conviction." U.S.S.G. § 2A6.2, Application Note 1. Regardless of the resolution of the "double counting" issue raised by Mr. Robinson, Mr. Robinson's repeated assaults and harassment of Ms. Robinson requires the two-level enhancement under § 2A6.2(b)(1)(D).[8] As this enhancement results in a guideline range (63–78) in excess of the statutory maximum, it is unnecessary to address Mr. Robinson's objection to double counting under § 2A6.2(b)(1)(A).

### III. CONCLUSION

This Court DENIES the Defendant's request for a three-level reduction under U.S.S.G. § 3E1.1(a) and (b) and GRANTS the Government's request for a two-level enhancement under U.S.S.G. § 2A6.2(b)(1)(D).[9]

SO ORDERED.

---

**8.** Mr. Robinson argues that the Government waived the right to argue the application of § 2A6.2(b)(1)(D). Be that as it may, there is no plea agreement in this case, and this Court has the right, even if the Government were not to object, to apply the Guidelines in accordance with the law. Mr. Robinson also argues that Ms. Robinson is not a "victim" within the meaning of the law. This argument is frivolous. *See* 18 U.S.C. § 3663A(a)(2)("'victim' means a person directly and proximately harmed as a result of the commission of an offense ...."); U.S.S.G. § 3D1.2, Application Note 2 ("The term 'victim' is not intended to include indirect or secondary victims. Generally, there will be one person who is directly and most seriously affected by the offense and is therefore identifiable as the victim."). This Court rejects Mr. Robinson's contention that a violation of 18 U.S.C. § 2262(a)(1), Interstate Violation of a Protection Order, is a victimless crime if the person protected by the order consents. Section 2262 was enacted as part of the Violence Against Women Act, 108 Stat. 1796, Pub.L. 103–322, a "comprehensive statute designed to provide women nationwide greater protection and recourse against violence and to impose accountability on abusers." *United States v. Casciano*, 124 F.3d 106, 110 (2d Cir.1997), *cert. denied*, 522 U.S. 1034, 118 S.Ct. 639, 139 L.Ed.2d 618 (1997). A violation of § 2262 is premised on a violation of the terms of a protection order, not on the absence of consent of the person protected. The person who is protected by the order cannot consent to its violation. This is made plain in this case by the order itself, which informed Mr. Robinson he could be arrested for violating the order even if the person who obtained the order invited him to violate it.

**9.** As noted, this Sentencing Order assumes that the necessary factual predicates have either been admitted by Mr. Robinson or other-

wise admitted into evidence at the sentencing hearing.