# United States Court of Appeals
## For the First Circuit

No. 04-2340

UNITED STATES OF AMERICA,

Appellee,

v.

LOUIS H. BURDI, a/k/a Lewis Trudy,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Boudin, Chief Judge,

Cyr, Senior Circuit Judge,

and Howard, Circuit Judge.

Edward S. MacColl, with whom Thompson, Bull, Furey, Bass & MacColl, LLC, P.A., was on brief, for appellant.
Margaret D. McGaughey, Appellate Chief, with whom Paula D. Silsby, United States Attorney, was on brief, for appellee.

July 15, 2005

**HOWARD**, **Circuit Judge**.  Louis H. Burdi pleaded guilty to mail fraud, see 18 U.S.C. § 1341, and now appeals his sentence.  We affirm.

In July 1999, Burdi, then living in California, contacted Manford Zorn, a Maine resident, to negotiate the purchase of a watch that Zorn had listed on an auction web site.  Burdi offered $14,000 for the watch and Zorn accepted the offer.  Burdi mailed Zorn what he knew to be a counterfeit cashier's check in the amount of $14,000, and Zorn shipped the watch to Burdi's California address.  As it turns out, this transaction was just one of several similar fraudulent transactions involving online auctions conducted by Burdi and an associate in the summer of 1999.

Local authorities soon discovered the fraudulent scheme, and a California state indictment charged Burdi with several fraudulent transactions, not including the transaction with Zorn.[1]  Burdi pleaded guilty to one of nine counts and the rest were dismissed.  Following his release on parole after serving some of his four-year California prison sentence, Burdi was charged federally in Maine in the present case with one count of mail fraud for the fraudulent purchase of Zorn's watch.

Upon pleading guilty, Burdi was released on bail pending sentencing.  His bail was revoked shortly thereafter when he

---

[1]According to Burdi, California authorities failed to uncover the Zorn transaction because Burdi had used a different courier for that particular transaction.

violated the conditions of his release by forging several checks belonging to his parents and moved out of his mother's Chicago home without reporting the move to his release supervisor.

At sentencing, the district court determined that the base offense level of six should be increased by three levels because the intended loss exceeded $10,000, see U.S.S.G. § 2F1.1(b)(1)(D),[2] but denied a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. Burdi's long and well-documented criminal history, mostly involving thefts and fraudulent transactions similar to the one in the present case, resulted in a Criminal History Category of VI and a sentencing range of 21 to 27 months. Due to the extensive nature of Burdi's criminal history, the court sua sponte considered an upward departure, but ultimately decided against it. The court also denied Burdi's request for a downward departure, advanced under U.S.S.G. § 5K2.0 on the ground that he had already been substantially punished for the offense conduct by serving time for the California conviction. The court sentenced Burdi to 27 months' imprisonment followed by three years of supervised release, and ordered him to pay restitution to Zorn in the amount of $14,000. See 18 U.S.C. § 3663A.

Burdi raises four issues on appeal: (1) whether his case should be remanded for resentencing in light of the Supreme Court's

---

[2]The court used the 1999 edition of the United States Sentencing Guidelines Manual. Section 2F1.1 has since been deleted and consolidated with § 2B1.1.

decision in <u>United States</u> v. <u>Booker</u>, --- U.S. ---, 125 S. Ct. 738 (2005); (2) whether the district court's refusal to grant a downward departure  was clearly erroneous; (3) whether the court erred by failing to grant a downward adjustment for acceptance of responsibility; and (4) whether there was insufficient evidence to support the court's award of restitution.

Burdi's first two arguments are largely premised on his contention that he has already been substantially punished for the crime at issue.  He contends that when he pleaded guilty in the California proceeding, he essentially accepted responsibility for, and was punished for, the same course of conduct (i.e., the scheme involving the use of counterfeit checks to purchase items listed on auction web sites) for which he is now incarcerated.  Although he admits that the California indictment did not charge the fraudulent Zorn transaction, Burdi argues that it is highly unlikely that he would have received a longer sentence in California had that transaction been charged.  More likely, he argues, he still would have pleaded guilty to the same single count and the Zorn transaction would have been dismissed at sentencing along with the eight other counts that were dismissed.  Burdi argues that the district court erred, not only in its refusal to mitigate his sentence based on his California time served, but also in its use of the California conviction to enhance his criminal history under U.S.S.G. § 4A1.1.

In his invocation of Booker, Burdi asserts that, due to the interrelationship of this case with the California proceeding, as well as his efforts to cooperate with the government and to seek treatment and rehabilitation for his mental health problems, there is a reasonable probability that, under the now advisory guidelines, the district court would sentence him more leniently. See United States v. Antonakopoulos, 399 F.3d 68, 75 (1st Cir. 2005). Because Burdi did not preserve his Booker challenge below, we review for plain error. See id.[3] Under this standard, we will grant a remand only if we find (1) an error, (2) that is plain, and that not only (3) affected the defendant's substantial rights, but also (4) seriously affected the fairness, integrity or public reputation of judicial proceedings. Id. at 77.

Burdi's argument falters on the third prong of the test. To establish that the error affected his substantial rights, Burdi must show a reasonable probability that the district court would impose a more favorable sentence on remand. Id. at 75. Although we are not "overly demanding as to proof of [such a] probability," United States v. Heldeman, 402 F.3d 220, 224 (1st Cir. 2005), we find nothing in the record to indicate that the court would sentence more leniently under advisory guidelines. If anything,

---

[3]Although it appears that the sentencing court was at least aware of Blakely v. Washington, 542 U.S. 296 (2004), see infra note 4, it does not appear that Burdi objected on that ground. In any event, Burdi's reply brief concedes that the Antonakopoulos standard applies.

given the comments of the court at sentencing, Burdi might well receive a <u>longer</u> sentence.[4]  Also telling is the court's exercise of discretion to sentence Burdi at the top of the applicable Guideline range.  <u>See</u> <u>United States</u> v. <u>McLean</u>, 409 F.3d 492, 505 (1st Cir. 2005) (that the court sentenced defendant in the middle of the guideline range, rather than at the bottom, "speaks volumes"); <u>United States</u> v. <u>Brennick</u>, 405 F.3d 96, 101-02 (1st Cir. 2005) (no reasonable probability for a more lenient sentence where the court sentenced at the high end of the range and indicated that it would have sentenced higher if it had the authority to do so).

Burdi alternatively argues that, even in a pre-<u>Booker</u> regime, the district court committed clear error in refusing to grant a downward departure to account for the time Burdi already served in California for the same course of conduct.  Although this court possesses jurisdiction to review "a refusal to depart where the refusal rests upon a <u>legal</u> mistake, such as a mistaken

---

[4]In announcing its sentence, the court stated:

I'm going to impose a sentence . . . at the high end of the guideline range of 27 months for the reasons that there needs to be protection against the kind of conduct that you've been engaging in.  Your lawyer has really been very effective in keeping me to the guideline range because, as I indicated, I seriously entertained an upward departure beyond that range.

Moreover, one factor that influenced the court to not depart upward was "the uncertain legal environment that we are all in with the <u>Blakely</u> decision."  As that uncertainty has now been resolved, the court could feel free to impose an upward departure.

assumption that a particular ground is generically impermissible as a basis for departure," we lack jurisdiction to review "a discretionary decision not to depart on the facts of the particular case." United States v. Rodriguez, 327 F.3d 52, 54 (1st Cir. 2003).

Here, the district court's decision not to depart was discretionary, and entailed no mistake of law. The court acknowledged Burdi's argument concerning the interrelationship between the present crime and the criminal conduct punished in the California proceeding, but nevertheless determined that "even if I were to set aside [the California] conviction, the criminal history points here are still abundantly large enough to encompass the sentence that's being imposed . . . ." Moreover, the court concluded that "the need to protect society and the deterrence goals are sufficiently strong here to justify the guideline sentencing range and to counsel against any downward departure." Given the facts of the case and Burdi's "dramatic" criminal history, the court viewed Burdi as a threat to society and sentenced him accordingly. We are not empowered to review the court's discretionary refusal to depart.

Burdi's third contention is that the court's denial of a two-level downward adjustment for acceptance of responsibility was clearly erroneous. See United States v. McLaughlin, 378 F.3d 35, 37 (1st Cir. 2004) (noting that the "inquiry into whether a

-7-

defendant has accepted responsibility is typically a fact-dominated enterprise, and we ordinarily review the sentencing court's determination of such an issue for clear error"). Burdi emphasizes the fact that he has been cooperative since being caught: he pleaded guilty in both the California proceeding and in the present case, he met with the FBI and the United States Attorney's Office to describe the events surrounding the offenses in these cases, he identified his associate in the fraudulent scheme and offered to testify against him, and in his allocution he was contrite and acknowledged that he has deep psychological problems that require medication and counseling. Burdi claims that the violations of his conditions of release resulted from a psychological condition over which he had no control at the time, but for which he is now seeking help.

Burdi bore the burden of establishing his entitlement to an adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a). See McLaughlin, 378 F.3d at 39. In determining whether a defendant qualifies for such a reduction, the sentencing court may consider whether the defendant has voluntarily terminated or withdrawn from criminal activity. See U.S.S.G. § 3E1.1 cmmt. n.1(b). Moreover,

> [i]t follows that when a defendant commits new offenses after having been charged and those offenses reflect adversely on the sincerity of the defendant's avowed contrition, the sentencing court may treat the commission of those offenses as an indication that the

> defendant has not accepted responsibility for the original crime . . . . In such circumstances, a sentencing court lawfully may 'decline to award a reduction for acceptance of responsibility <u>on that ground alone</u>.'

<u>McLaughlin</u>, 378 F.3d at 38 (emphasis added) (quoting <u>United States v. Carrington</u>, 96 F.3d 1, 9 (1st Cir. 1996)).

Although Burdi may have taken some positive steps toward accepting his responsibility for his crime, the district court quite reasonably concluded that Burdi's post-plea criminal conduct made an adjustment unwarranted. There was no clear error here.

Burdi's final argument is that the district court erroneously ordered restitution because the $14,000 loss amount was not supported by reliable evidence. Burdi argues that a restitution award must be based on the amount of loss actually caused by the offense conduct. He contends that his offer to pay $14,000 for the watch does not establish its market value because he never actually intended to pay <u>anything</u> for it. Moreover, he contends that in this case both parties were bargaining in bad faith. According to Burdi, the government never contradicted his consistent assertion that Zorn actually double-crossed him by sending him a watch that was worth substantially less than $14,000.[5]

---

[5]Burdi told the presentence investigator that the watch was only worth $300.

"We review restitution orders for abuse of discretion and their subsidiary findings of fact for clear error." United States v. Cheal, 389 F.3d 35, 48 (1st Cir. 2004). To the extent an appellant's challenge concerns an alleged error of law, our review is de novo. Id.

The Mandatory Victims Restitution Act (MVRA), which made restitution mandatory for the victims of certain crimes, including mail fraud, provides that, if return of the lost property itself is impossible, impracticable, or inadequate, the defendant must pay "an amount equal to . . . the greater of . . . the value of the property on the date of the damage, loss, or destruction; or . . . the value of the property on the date of sentencing." 18 U.S.C. § 3663A(b)(1)(B). In calculating the restitution amount, absolute precision is not required. See United States v. Vaknin, 112 F.3d 579, 587 (1st Cir. 1997) (requiring only a "modicum of reliable evidence" in fixing the amount of restitution due).[6]

The watch being unavailable at the time of sentencing, the district court's obligation was to attempt to come to a "reasonable determination of appropriate restitution by resolving uncertainties with a view towards achieving fairness to the

---

[6]Although Vaknin dealt with a different statute, the Victim and Witness Protection Act (VWPA), 18 U.S.C. § 3663, the language in the VWPA concerning the calculation of the restitution amount is identical to that in the MVRA. Therefore, it is "appropriate for us to turn to Vaknin for guidance." United States v. Cutter, 313 F.3d 1, 7 (1st Cir. 2002) (consulting Vaknin in interpreting the causation element of the MVRA).

victim." Id. (quotation omitted). The government provided some evidence of the value of the watch by establishing, through Burdi's own admission, that he had offered to pay $14,000 for it. Ordinarily, the agreed upon sales price would be probative in establishing actual value, and Burdi does not suggest that $14,000 would have been an unreasonable price had the watch he received been authentic. See United States v. Kayne, 90 F.3d 7, 11-12 (1st Cir. 1996). Despite Burdi's bad faith bargaining, the district court could have permissibly inferred that Burdi, in attempting to portray the legitimacy of his offer, proposed an amount within a reasonable range of the actual value of a genuine watch of the kind bargained for.

The government's evidence of the watch's value was enough at least to require Burdi to counter it with probative evidence of his own. Cf. United States v. Voigt, 89 F.3d 1050, 1092-93 (3d Cir. 1996) (in a non-mandatory restitution case, where one factor in ordering restitution is the defendant's ability to pay, the district court did not abuse its discretion in shifting the burden to the defendant to disprove his ability to pay after the prosecution established the amount of the loss). Burdi's only evidence in rebuttal was his own self-serving testimony that the watch he actually received was worth substantially less than $14,000. Given Burdi's extensive history of fraud and deception, the court was entitled to accord his testimony little or no weight.

In short, the court's order of restitution was not an abuse of discretion.

For the foregoing reasons we **<u>affirm</u>** the sentence and the order of restitution.