In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-4048

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DAVID DIAZ-GAUDARAMA,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Indiana, New Albany Division.
No. 4:07 CR 0007—**David F. Hamilton**, *Judge.*

ARGUED APRIL 16, 2010—DECIDED JULY 29, 2010

Before EASTERBROOK, *Chief Judge,* FLAUM, *Circuit Judge,* and HIBBLER, *District Judge.*[*]

FLAUM, *Circuit Judge.* Defendant-appellant David Diaz-Gaudarama appeals from the sentence he received after pleading guilty to conspiring to distribute methamphetamine, cocaine, and marijuana. After about a year of delay

---

[*] The Honorable William J. Hibbler, District Judge for the Northern District of Illinois, sitting by designation.

due to what the district court ultimately concluded to be malingering, Diaz-Gaudarama went to trial. Diaz-Gaudarama attempted to plead guilty on the morning of trial but the district court rejected the plea because of concern about Diaz-Gaudarama's remarks that he sought to plead guilty in order to receive medical care. After the government rested its case, Diaz-Gaudarama again expressed a desire to plead guilty, this time stating that he was aware of what he had done. The district court accepted the plea. At sentencing, the district court refused to credit Diaz-Gaudarama with the two-point reduction for acceptance of responsibility. Diaz-Gaudarama appeals, and we affirm.

## I. Background

From 2005 through 2008, Diaz-Gaudarama was a member of a cocaine, methamphetamine, and marijuana trafficking conspiracy that operated in southeastern Indiana; Louisville, Kentucky; and Miami, Florida. Throughout 2007, federal, state, and local law enforcement made controlled purchases of cocaine and methamphetamine from members of the group. In May 2007, law enforcement received authorization to conduct telephone surveillance of certain members of the organization. During the course of that surveillance, law enforcement recorded several conversations between members of the conspiracy, including Diaz-Gaudarama, regarding their drug distribution activities.

In June 2007, Diaz-Gaudarama was indicted and charged with conspiring to possess with intent to dis-

tribute and to distribute in excess of 500 grams of metham-phetamine and in excess of five kilograms of cocaine and marijuana. The government accused Diaz-Gaudarama of arranging for drug shipments from Miami to Louisville and acting as a distributor within the organization in Indiana and Kentucky.

Shortly after his indictment, Diaz-Gaudarama raised the issue of his competency to stand trial. His counsel moved for a competency hearing, stating that his client "exhibited difficulty in understanding the charges against him, the nature of the court proceedings, and failed to respond in a logical manner to questions asked of him by the Magistrate in open court and to counsel's questioning in private." This began a series of psychiatric evaluations.

The magistrate judge presiding over pretrial matters in this case initially sent Diaz-Gaudarama to Lexington, Kentucky, for an evaluation. The initial evaluation found that Diaz-Gaudarama was in need of psychiatric treatment and placed him on suicide watch. Diaz-Gaudarama was then transferred to the Federal Medical Center in Butner, North Carolina, for evaluation and restoration to competency, where he remained for several months.

On April 25, 2008, the district court held a competency hearing. Diaz-Gaudarama's court-appointed psychiatrist testified that Diaz-Gaudarama was not competent to stand trial and recommended that Diaz-Gaudarama continue to receive services at a specialized facility. However, the evaluation conduct by doctors at the

Medical Center, which the district court also considered, concluded that Diaz-Gaudarama was malingering and was in fact competent to stand trial. According to the report, Diaz-Gaudarama admitted to a staff member, "I lied to my doctors to get my charges dropped, I'm really not crazy." The report also notes other admissions of malingering to various Spanish-speaking staff members. (Diaz-Gaudarama speaks little English and relies on an interpreter when testifying in court.) Finally, the report documents several instances of claimed ailments that proved to be false; for example, Diaz-Gaudarama falsely claimed not to have slept for 25 days and that he was unable to swallow food. Presented with both assessments of Diaz-Gaudarama's condition, the district court concluded that Diaz-Gaudarama was "to put it bluntly . . . pretend[ing] to act crazy" and that while he "has shown an ability to maintain this act for days and even weeks at a time . . . he did not manage to keep it up during the much longer evaluation at Butner." After noting that this act had "already delayed the case for more than a year," the district court determined that Diaz-Gaudarama was competent to proceed to trial.

On May 19, 2008, Diaz-Gaudarama provided notice of his intent to rely upon an insanity defense at trial. This notice triggered another round of mental health evaluations by the Bureau of Prisons and the defense-retained expert. Diaz-Gaudarama moved the district court to reconsider its competency determination based on this additional evidence, but the district court denied the motion, concluding that the additional examinations did not shed new light on Diaz-Gaudarama's competency.

Diaz-Gaudarama's jury trial was scheduled to begin on June 8, 2009. That day, before jury selection began, Diaz-Gaudarama attempted to plead guilty to the charge contained in the indictment. During the change of plea hearing, Diaz-Gaudarama admitted several details about the offense. At the end of the hearing, however, the district court asked Diaz-Gaudarama what medicines he had been taking in the past few days. Diaz-Gaudarama responded that he was taking a small white pill and he thought it was harming him. He said he did not know what the pill was supposed to do, but that he was having difficulty swallowing it because something was wrong with his throat. When the district court informed Diaz-Gaudarama that he would receive a sentence of at least ten years in prison, and up to life, Diaz-Gaudarama responded, "just as long as I get sent to the doctor, you can give me ten years. You can give me life. Just make sure I get to the doctor." In light of these statements, the district court refused to accept the guilty plea.

The government completed its case on the third day of trial. During an ensuing discussion with the district court concerning his right to testify in his own defense, Diaz-Gaudarama announced again that he wished to plead guilty. This time, Diaz-Gaudarama informed the district court that he wished to plead guilty because he was, in fact, guilty as charged. When asked again why he wished to plead guilty, Diaz-Gaudarama stated, "because I don't want to get too much time, and I am also aware of what I have done as well." After a plea colloquy, the

district court accepted Diaz-Gaudarama's guilty plea, and the jury was excused.

The probation office then prepared a presentence report (PSR) for Diaz-Gaudarama, which calculated a base offense level of 36 and a criminal history category of I. The report also included a two-level guidelines reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a). This resulted in a guideline range of 151 to 188 months of imprisonment. Neither the government nor the defendant objected to the PSR before the sentencing hearing.

The sentencing hearing was held on November 23, 2009. The government again stated that it had no objection to the PSR. Sua sponte, the district court raised the question of whether Diaz-Gaudarama was entitled to an acceptance-of-responsibility credit and whether Diaz-Gaudarama should receive an enhancement for obstruction of justice because of his malingering. After hearing argument from both sides, the district court declined to allow a reduction for acceptance of responsibility. The district court noted that it was not until the eve of trial that Diaz-Gaudarama attempted to plead guilty, and that he did not in fact do so until after the government had presented its case against him. The district court did not give Diaz-Gaudarama an enhancement for obstruction of justice, ultimately deciding to give Diaz-Gaudarama "the benefit of the doubt." This resulted in a total offense level of 36 and a criminal history category of I, for a guidelines range of 188 to 235 months of imprisonment. The district court sen-

tenced Diaz-Gaudarama to 210 months of imprisonment. No fine was imposed, and the district court ordered a five-year term of supervised release to follow imprisonment.

## II. Analysis

Under the advisory guidelines, a defendant may receive a two-level decrease in his offense level if he "clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). A district court's decision to award or deny a defendant a reduction for acceptance of responsibility depends heavily on the facts, and is thus reviewed for clear error. *See United States v. McIntosh*, 198 F.3d 995, 999 (7th Cir. 2000).

Diaz-Gaudarama argues that his initial plea colloquy on June 8, 2009, is the sort of full and accurate account of his misconduct contemplated by application note 1(a) to U.S.S.G. § 3E1.1, which identifies as an appropriate consideration "truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct . . . ." He wants us to focus on his first attempt to plead guilty, because entering a plea of guilty prior to trial and admitting the conduct comprising the offense of conviction is "significant evidence of acceptance of responsibility." *See* U.S.S.G. § 3E1.1 n.3. Of course, the district court did not actually accept Diaz-Gaudarama's plea until after the government had put on its case. And in any event, a guilty plea before trial "may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility." *Id.*

We have long held that the last-minute nature of a guilty plea provides a significant basis to deny an acceptance-of-responsibility reduction. *See, e.g., United States v. Carrera*, 259 F.3d 818, 827 (7th Cir. 2001) (affirming denial of an acceptance-of-responsibility reduction for a defendant who attempted to plead guilty on the first day of trial); *United States v. Sierra*, 188 F.3d 798, 804-05 (7th Cir. 1999) (affirming denial of an acceptance-of-responsibility reduction for defendant who pleaded guilty on the last business day before trial); *United States v. Rosalez-Cortes*, 19 F.3d 1210, 1219 (7th Cir. 1993) (affirming denial of an acceptance-of-responsibility reduction for a defendant who pleaded guilty after a two-day bench trial). Even when a defendant pleads guilty in a timely manner, statements or conduct inconsistent with acceptance of responsibility may prevent a defendant from receiving a reduction. Rather than formulating categorical tests, we ask that district courts "assess the defendant's demonstration of 'genuine remorse,' or 'conscience.'" *McIntosh*, 198 F.3d at 999-1000 (quoting *United States v. Dvorak*, 41 F.3d 1215, 1217 (7th Cir. 1994)).

The district court's decision in this case was not clear error. First, the district court properly relied on the last-minute nature of the plea, as the earliest attempt Diaz-Gaudarama made to plead guilty occurred on the morning of trial. *See Sierra*, 188 F.3d at 804-05. Second, Diaz-Gaudarama's own statements during his plea colloquy do not reflect remorse, but rather suggest that he pleaded guilty in an attempt to reduce his punishment; he said only that he didn't want to "get too much time" and that he was "aware of what he had done." Finally, the

district court found that Diaz-Gaudarama had faked psychological illness in an attempt to evade punishment. While the district court exercised its discretion and did not apply the obstruction of justice enhancement, this conduct is nonetheless inconsistent with genuine remorse for one's crime. *Cf. United States v. Ewing*, 129 F.3d 430, 435 (7th Cir. 1997) (holding that an acceptance-of-responsibility reduction is generally not appropriate where defendant has obstructed justice); U.S.S.G. § 3E1.1 n.4 (same). Given Diaz-Gaudarama's attempt to avoid criminal responsibility for his actions, the absence of statements by Diaz-Gaudarama reflecting remorse for his crime, and the last-minute nature of his attempt to plead guilty, he is not entitled to a reduction in his advisory guideline range for acceptance of responsibility.

### III.  Conclusion

We AFFIRM the judgment of the district court.