NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued April 27, 2011
Decided June 7, 2011

**Before**

RICHARD D. CUDAHY, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 10-3081

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 95 CR 742-1 |
| MARCO MORALES, *Defendant-Appellant*. | William T. Hart, *Judge.* |

**O R D E R**

Fifteen years ago Marco Morales was arrested and indicted for selling cocaine to an informant. After Morales provided substantial assistance to the government and pleaded guilty to a superseding information covering charges for fraud and bribery, he fled to Mexico instead of reporting to serve his sentence. Twelve years later, Morales was extradited to the United States, where he pleaded guilty to his original drug charges and was sentenced to 84 months' imprisonment. Morales appeals the sentence, arguing that the district court committed procedural error by refusing to lower his offense level to reflect an acceptance of responsibility for the drug charges under U.S.S.G. § 3E1.1. Because the

district court adequately justified its refusal to award acceptance points to Morales, we affirm its judgment.

Marco Morales sold cocaine in 1994 to an FBI informant. Morales was arrested and indicted in December 1995, and five weeks later pleaded guilty to distributing cocaine in violation of 18 U.S.C. § 841(a)(1). The probation officer calculated Morales's guidelines range of 60 to 71 months' imprisonment, but the parties repeatedly postponed his sentencing hearing so that Morales could assist the government with a related corruption investigation.

During Morales's cooperation, the government learned that, in his capacity as a construction company operator, Morales had defrauded labor unions and bribed a Chicago official who awarded city contracts. Morales testified before a grand jury and helped record a meeting with a city official. The government filed a superseding information, and Morales pleaded guilty in July 1997 to mail fraud, 18 U.S.C. § 1341, and bribery, 18 U.S.C. § 666. The benefit to Morales was that the new charges would not jeopardize his status as a lawful permanent resident. In his superseding plea agreement, Morales also stipulated to the facts underlying the cocaine offense. His guidelines imprisonment range was 57 to 71 months. The district court sentenced Morales to 59 months' imprisonment and granted the government's motion to dismiss the original indictment on the drug charge. The court allowed Morales, released on bond up until that point, to self-report to the Bureau of Prisons to begin his sentence.

But Morales did not report to federal custody because he fled to Mexico, fearing (he says) his and his family's safety after having received death threats for cooperating with the government. Seven years later Mexican authorities finally apprehended Morales. The United States sought to extradite Morales, but the Mexican government refused—the Mexican statute of limitations for arrest to serve an unexecuted sentence had elapsed—and released him. To circumvent this procedural bar, two years later the United States government recharged Morales with one count of distributing cocaine (based on the original 1994 cocaine sale to which he had earlier stipulated in the plea agreement). The justification for the reinstatement of the drug charge was that Morales's flight was considered to be a breach of his plea agreement, thus negating the government's promise to forego prosecution of the drug dealing conduct. The Mexican authorities again arrested Morales and, after further contested extradition proceedings, he was returned to the United States nearly three years later, in September 2009.

Shortly thereafter, Morales pleaded guilty to distribution. In Morales's presentence investigation report, the probation officer recommended a two-level decrease under U.S.S.G. § 3E1.1(a) for acceptance of responsibility. Both parties objected. Morales asserted

that his offense level should be decreased by one more level, pursuant to § 3E1.1(b), to reflect the assistance he provided to the government. The government contended that by fleeing to Mexico for 12 years, Morales had not timely accepted responsibility and therefore should not receive any decrease. And, the government added, by resisting extradition twice Morales further showed a lack of acceptance and forced the government into a lengthy fight, wiping out any resource savings from Morales's guilty plea. Morales countered that the district court should evaluate his acceptance of responsibility for the distribution charge by examining his behavior once he was back in United States custody in 2009, not for the flight from his unrelated fraud and bribery conviction in 1997. He also pointed out that, when initially charged with distribution, he pleaded guilty within five weeks; the second time he also entered a prompt plea of guilty when he was eventually returned to the United States. Finally, Morales argued that the exercise of his legal right to contest extradition should not adversely affect him at sentencing.

The district court decided not to lower Morales's offense level for acceptance of responsibility, citing his years hiding out in Mexico and the need to extradite him:

> COURT: And some of what you say may have some validity with respect to the first extradition proceeding, more validity. But the second extradition proceeding was simply an effort to stop when he had been indicted again on this offense.
>
> Originally he was indicted on it. Then he made a plea agreement with the government and pleaded guilty to frauds and kickback charges, which is on what was before the court then. And because of the international law, that's being dismissed because Mexico wouldn't extradite him on those charges, but they would extradite him on the drug charge. And then he fought the extradition.
>
> No, sir. I have to agree with the government. In this case this is not a case for prompt acceptance of responsibility. The entire number of years in Mexico, finding out what the charges were and then coming back here, and then finally being brought back here under force -- under force of law, I should say probably, that does not constitute, in my judgment, a case in which there has been, quote, an acceptance of responsibility.
>
> It may be a reality here today that he pleaded guilty, but certainly I can't ignore and I don't think I should ignore the history here.

Therefore, I will decline to allow additional deduction for that purpose.

The court calculated Morales's total offense level of 28, and a Category I criminal history, yielding a guidelines imprisonment range of 78 to 97 months. The court imposed a sentence of 84 months' imprisonment, and dismissed the fraud and bribery charges against Morales (a required condition of his extradition).

On appeal, Morales makes one argument: that the district court procedurally erred when it refused to apply the two-level decrease under § 3E1.1(a). He focuses on what he characterizes as the district court's impermissible reliance on (1) his flight to Mexico, which Morales argues predated his indictment for, and was unrelated to, his offense of conviction, and (2) his resistance to extradition.

Under the advisory guidelines, a defendant may receive a two-level decrease in his offense level if he "clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). Morales maintains that he did so after he returned to the United States in 2009 because he admitted the elements of his offense and expressed remorse. These steps, though consistent with an acceptance of responsibility, do not entitle Morales to a reduction as a matter of right and "may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility." U.S.S.G. § 3E1.1 cmt. n.3; *United States v. Sellers*, 595 F.3d 791, 793 (7th Cir. 2010). The decision to award or deny a reduction for acceptance of responsibility depends heavily on the facts, and thus we review it for clear error. *United States v. Ali*, 619 F.3d 713, 719 (7th Cir. 2010); *United States v. Diaz-Gaudarama*, 614 F.3d 387, 390 (7th Cir. 2010). Finally, the burden rests with Morales to establish that he should receive a reduction. *United States v. McIntosh*, 198 F.3d 995, 999 (7th Cir. 2000).

The district court considered events before the 2006 indictment in determining whether Morales accepted responsibility, stating that it could not ignore the "history" of the case and the "total number of years in Mexico." The court should not be permitted to consider his flight, Morales argues again in this court, because it preceded the renewed charges for the drug offense. But Morales overlooks the fact that the renewed drug charges, and the earlier fraud, bribery, and original drug charges are all part of the same prosecution. When Morales fled, he did not flee only the fraud and bribery conviction—based on his plea agreement, he knew that he was also fleeing possible criminal prosecution for the cocaine offense as well. The fraud, bribery and drug dealing conduct were all part of the bargain he entered and he had committed to pay the price of a single period of incarceration for the whole package. A defendant who evades rather than surrenders to legal custody, as Morales did, continues to break the law and does not

warrant acceptance-of-responsibility points. *See United States v. Etchin*, 614 F.3d 726, 740 (7th Cir. 2010) (explaining that the defendant did not deserve points for acceptance of responsibility on drug charges because he fled from custody on an unrelated charge and avoided prosecution for months). And Morales does not contest that *when* he fled he breached the plea agreement, allowing the government to vacate the agreement and reinstate the cocaine charge.

Morales responds that the district court could consider only his behavior after 2006 based on cases that prevent courts from looking at misconduct that predates the lodging of federal charges. *See United States v. Wade*, 458 F.3d 1273, 1280-81 (11th Cir. 2006); *United States v. McLaughlin*, 378 F.3d 35, 41 (1st Cir. 2004). But these cases do not advance his contention. In *Wade,* the defendant was arrested for the state crime of possessing a firearm, released, and then arrested by the state six months later for a second possession. 458 F.3d at 1275. Upon the defendant's federal convictions for possessing a firearm, the district court did not award Wade acceptance points, citing the fact that he had continued to engage in criminal activity after his first state arrest. The Eleventh Circuit reversed, holding that the district court could not fault the defendant for his actions taken before the federal indictment. *Id.* at 1279. It reasoned that "the clock should start to run no later than the time that the defendant has been put on notice, by the filing of a formal charge, that federal prosecutors have taken an interest in his conduct." *Id.* at 1281 (quoting *McLaughlin*, 378 F.3d at 41). *Wade* thus allows a district court to look at conduct inconsistent with acceptance of responsibility back to when the defendant was formally notified of federal charges.

Here, Morales was on notice of the federal interest in his cocaine activities long *before* 2006 and before he unlawfully fled the United States. He was on notice back in 1995 when federal prosecutors first indicted him on the cocaine charge. Morales responds that this cocaine charge was later superseded by the fraud and bribery charges. But in *McLaughlin,* on which Morales also relies, a superseding information after a federal indictment did not restrict the district court's inquiry to the superseding information; the court could consider any unlawful misconduct throughout the entire prosecution. *See McLaughlin*, 378 F.3d at 41 ("entitlement to an acceptance-of-responsibility discount should not depend upon which charging document was in force when he entered his plea"). Thus the district court properly considered Morales's unlawful flight to and time in Mexico.

Finally, Morales objects to how the district court criticized his extradition challenge. The district court's reference to the extradition fight (in the context of Morales's total time spent in Mexico) does not undercut our confidence in the district court's sentencing decision. Put in context, the reference was likely just a criticism of Morales's longstanding

refusal to surrender to the legal process, rather than his use of it after he was arrested. In fact when Morales emphasized that his lawyers had advised him to challenge the legal basis for the second extradition, the court acknowledged those concerns and explained "[w]e are not criticizing the fact that he had a lawyer." The court's comments, therefore, do not undermine the sentencing decision.

Accordingly, we AFFIRM the judgment of the district court.