# United States Court of Appeals
## For the First Circuit

No. 05-1547

UNITED STATES,

Appellee,

v.

ANTHONY WAYNE ROBINSON,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]

Before

Boudin, Chief Judge,
Stahl, Senior Circuit Judge,
and Lynch, Circuit Judge.

Jeffrey Silverstein on brief for appellant.
Margaret D. McGaughey, Appellate Chief, and Paula D. Silsby,
United States Attorney, on brief for appellee.

December 23, 2005

**STAHL**, **Senior Circuit Judge**.  Anthony Robinson pled guilty to a charge under the Violence Against Women Act, 18 U.S.C. § 2262, for the interstate violation of a protective order.  The district court concluded that the federal Sentencing Guidelines recommended application of the maximum sentence authorized by the statute, a term of 5 years, and sentenced Robinson accordingly.  Robinson now contests the court's application of a sentencing enhancement for prior threatening and abusive behavior and challenges the court's failure to reduce his sentence for acceptance of responsibility.  Finding that the sentence imposed was reasonable, we reject Robinson's challenges.

## I. Background

Until 2004, Anthony Robinson lived in the state of Washington.  In 2003, he began a short prison term for assaulting his wife, Rebecca.  Upon his release in 2004, a protective order issued by the state court in Washington came into effect.  The order barred Robinson from having any contact with his wife.

In the summer of 2004, Robinson fled Washington and headed for Maine with his wife and two children in tow.  In June, a man identifying himself as Rebecca's father called the county sheriff's office in Hancock County, Maine, to inform that office that he had reason to believe that Robinson and his wife had settled in the county after leaving the state of Washington.  Soon afterwards, the Washington Department of Human Services contacted

its Maine counterpart to ask it to locate the Robinsons' children and investigate their well-being. The Maine agency in turn supplied the sheriff's department with information that enabled the investigating detective from that office to locate the Robinson family. Robinson and his wife were found living together at a campground and working at a local cannery. Robinson was arrested and charged with violating the federal statute that prohibits the interstate violation of a protective order, 18 U.S.C. § 2262.

Robinson pled guilty to the charge without a plea agreement. The court explained to Robinson that it was not bound by the government's sentencing recommendations and that if it departed from those recommendations, Robinson would not be entitled to revoke his guilty plea. Robinson acknowledged that he understood these conditions, and the court accepted the guilty plea. The U.S. Probation Office prepared and submitted to the parties a proposed presentence investigation report that concluded that the applicable Guidelines sentencing range was 46 to 57 months. After Robinson objected to some portions of the report, the Probation Office submitted to the court a final, revised report that recommended a sentence of between 37 and 46 months.

The court, sentencing Robinson in April 2005, after the Supreme Court decided <u>United States</u> v. <u>Booker</u>, 125 S. Ct. 738 (2005), appropriately understood the Guidelines to be merely advisory but nevertheless an important consideration in sentencing,

and applied the Guidelines to Robinson's case to determine an appropriate sentence. Having done so, the court found the applicable range to be substantially higher than the range suggested by the final presentence report.

The Guidelines, the court noted, supply a base offense level of 18 for violations of § 2262. See USSG § 2A6.1. Robinson requested that the court reduce his sentence under USSG § 3E1.1 because he had accepted responsibility for his conduct, but the court determined that he did not merit such a reduction. The court applied a two-level enhancement to the offense level under USSG § 2A6.2(b)(1)(D) because the crime involved a pattern of activity involving the same victim.

In his sentencing order, the district judge noted that the burden of demonstrating eligibility for acceptance of responsibility lies with the defendant, and that Robinson had not carried his burden. Although he pled guilty to the offense, which went some way towards demonstrating contrition, the judge was unconvinced. The judge found that three facts strongly suggested that Robinson had not fully accepted responsibility for his crime. First, Robinson attempted to justify his flight from Washington, which he explained was motivated in part by his desire to put some distance between the Robinson family and Rebecca's father, who was constantly "trying to get [Robinson] locked up." Second, Robinson tried to excuse his conduct: he told the court that he been advised

by an attorney that the order had no effect outside of the state of Washington, and so had believed that by moving to Maine he could evade the restrictions the protective order had imposed. Third, and most important, Robinson persisted in making illegal contact with Rebecca: while he was incarcerated pending sentencing, Robinson had written a number of letters to his wife. Some of these letters were gentle, some threatening, but all were written in violation of the still-active protective order, which prohibited communication between Robinson and his wife. This ongoing contact with his wife, the judge found, demonstrated that Robinson had not accepted that his continued contact with Rebecca had been wrongful.

The court next considered the applicability of USSG § 2A6.2(b)(1)(D), which provides for a two-level enhancement of a defendant's offense level where the criminal activity under 18 U.S.C. § 2262 "involves . . . a pattern of activity involving stalking, threatening, harassing, or assaulting the same victim." The judge noted three past incidents in which it was demonstrated by a preponderance of the evidence that Robinson had harassed, threatened, or assaulted Rebecca. These included: an attempt by Robinson to choke his wife on April 20, 2003, in Lakewood, Washington, which resulted in an assault conviction; a second incident of abuse in Pierce County, Washington, on March 31, 2004, which resulted in a second assault conviction; and the series of letters to Rebecca that Robinson had written while incarcerated and

awaiting sentencing on the instant charge, which were prohibited by the protective order and in some of which Robinson threatened Rebecca with harm. These incidents, the district court concluded, constituted a pattern of activity that merited a two-level enhancement under § 2A6.2(b)(1)(D).

The court determined that Robinson merited a criminal history level of V, a determination that is not challenged here. With the two-step enhancement to his base offense level in place, Robinson's offense level was 20. The criminal history level and offense level taken together yielded a recommended sentence of 63 to 78 months. The maximum sentence Robinson could receive under § 2262 was 60 months, and the court therefore imposed the full maximum sentence. Robinson timely appealed his sentence.

## II. Analysis

On appeal, Robinson challenges the district court's decisions to deny him an acceptance-of-responsibility reduction and to impose the pattern-of-activity enhancement. We discuss each issue in turn.

### A. Enhancement for Pattern of Activity

1. Standard of Review

Robinson was sentenced in April 2005, after the Supreme Court decided United States v. Booker, 125 S. Ct. 738 (2005). In Booker, the Supreme Court excised the portions of the U.S. Code that purported to make the United States Sentencing Guidelines

binding upon the district courts during sentencing.  After <u>Booker</u>, the Guidelines are merely advisory, which means that a district court has considerable leeway to impose a sentence that falls outside of the range suggested by the Guidelines.

In <u>Booker</u>, the Court also severed and excised 18 U.S.C. § 3742(e), the portion of the Federal Sentencing Act that once provided the standard under which courts of appeals would review sentences.  <u>See</u> <u>Booker</u>, 123 S. Ct. at 765.  To fill the vacuum thus created, the Court named the new standard: courts of appeals would review sentences for "reasonableness."  <u>Id.</u>

Before proceeding to evaluate Robinson's claims, we must determine what reasonableness review means when we are faced with a challenge to a sentencing court's legal interpretation of a Guidelines provision.  In the past, our general rule has been to review interpretations of the legal meaning of the Guidelines <u>de novo</u>.  <u>See</u> <u>United States</u> v. <u>DiSanto</u>, 86 F.3d 1238, 1254 (1st Cir. 1996).  We conclude that <u>Booker</u>'s new reasonableness standard leaves our review of such questions unchanged.

Despite <u>Booker</u>'s excision of certain portions of the statute, the Sentencing Act still imposes certain requirements on a sentencing court.  It prescribes a set of factors, set forth at 18 U.S.C. § 3553(a), that a sentencing court must take into account in imposing a sentence.  In <u>Booker</u>, the Supreme Court recognized that those factors would guide appellate review for reasonableness.

-7-

See <u>Booker</u>, 125 S. Ct. at 766 ("Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing. Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable.").

Among the factors that a district court must consider is the sentencing range recommended by the Guidelines. 18 U.S.C. § 3553(a)(4)(A). A sentencing court is still required to "consult [the] Guidelines and take them into account when sentencing." <u>Booker</u>, 125 S. Ct. at 767. The court is not bound to impose a sentence within the range the Guidelines recommend, of course, and may depart from it if it reasonably concludes that the other § 3553 factors warrant such a departure. However, so far as the Guidelines bear upon the sentence imposed, the court's calculation must be correct, subject of course to the limitations of plain error or harmless error review. To this extent, then, the court must rely, in imposing a sentence, on a correct understanding of the legal meaning of the Guidelines.

We conclude therefore that the decision in <u>Booker</u> did not disturb the standard of review that we apply to a district court's interpretation of the Guidelines. We will continue to determine the legal meaning of Guidelines provisions <u>de novo</u>. This conclusion is, to our knowledge, consistent with the conclusion reached by those of our sister circuits that have resolved the standard of review to be applied to a post-<u>Booker</u> sentence imposed

-8-

under the Guidelines.  See, e.g., United States v. Crosby, 397 F.3d 103, 114 (2d Cir. 2005); United States v. Villegas, 404 F.3d 355, 359 (5th Cir. 2005); United States v. Hazelwood, 398 F.3d 792, 794-95, 800-01 (6th Cir. 2005); United States v. Doe, 398 F.3d 1254, 1257-58 & n. 5 (10th Cir. 2005); United States v. Price, 409 F.3d 436, 442 (D.C. Cir. 2005).

Having determined the appropriate standard of review, we now turn to Robinson's USSG § 2A6.2(b)(1)(D) arguments.

2. Government Waiver

The U.S. Probation Office prepared and submitted to the parties a proposed presentence investigation report, which did not recommend application of § 2A6.2(b)(1)(D).  The government stated that it had no objections to the recommendations made in the report.  Robinson, however, registered a number of objections.  The probation office revised the report in response to Robinson's objections, and submitted the revised version to the district court.  In a memorandum submitted to the court only in response to the revised presentence report, the government for the first time asked the court to apply § 2A6.2(b)(1)(D).

Robinson argues that, because the government had an opportunity to ask the court to apply § 2A6.2(b)(1)(D) before submission of the revised report, and did not avail itself of that opportunity, the government waived any possible application of that guideline, and that the court was therefore wrong to apply it.  The

application of a particular guideline and imposition of a sentence are not, however, the government's to waive in a case, such as this one, where the defendant has pled guilty without the benefit of a plea agreement as to sentencing. See Fed. R. Crim. P. 11(c)(1)(C) & (c)(4). Robinson's argument supposes that the presentence report limits the sentence the court may impose, but that is simply not the case. The presentence report and the government's response to it are advisory, intended to help the district court arrive at an appropriate sentence. The responsibility, and with it the power, to recognize the applicable law and impose a sentence under it belong to the judge. See United States v. Miller, 116 F.3d 641, 685 (2d Cir. 1997) ("[T]he sentencing judge is not bound by the recommendations of the PSR . . . ."); United States v. Gordon, 895 F.2d 932, 936 (4th Cir. 1990) ("[T]he decision of the district court on whether to apply a particular guideline is not controlled by the probation officer's recommendation."). The court was therefore free to impose a sentence under the Guidelines regardless of the recommendations in the presentence report or whether any objections to that report were raised by the government.

3. Necessity of Review

The government next argues that we need not consider Robinson's argument about the applicability of USSG § 2A6.2(b)(1)(D), because the question is of no more than academic interest. This is because, the government says, the sentence

Robinson received, which incorporated a 2-level enhancement under § 2A6.2(b)(1), would have been permissible even if the court had found that section inapplicable. The government notes that, with § 2A6.2(b)(1)(D) taken into account, the Guidelines recommended sentencing at greater than 60 months, the statutory maximum, while without § 2A6.2 in the mix, the recommended range would have been 51 to 63 months. The government is correct that a 60-month sentence was compliant with the Guidelines in either case, but if the § 2A6.2 enhancement had not been applied, the district court could have imposed a 51-month sentence without departing from the Guidelines.

We need not decide, however, whether the facts of this case are such that we are compelled to determine the proper meaning of the Guidelines provision at issue. We think it prudent to address the question in order to provide some guidance to the district courts on an uncommon issue of Guidelines interpretation. We therefore assume _arguendo_ that Robinson would be entitled to relief were we to find the district court to have been in error, reach the question of the applicability of § 2A6.2(b)(1)(D) in Robinson's case, and find that the district court committed no such error.

4. Applicability of USSG § 2A6.2(b)(1)(D)

Robinson contests the application of USSG § 2A6.2(b)(1)(D) to raise his offense level from 18 to 20.[1] Section 2A6.2(a) provides a base offense level of 18 for a violation of 18 U.S.C. § 2262. Section 2A6.2(b)(1)(D) then provides: "If the offense involved . . . a pattern of activity involving stalking, threatening, harassing, or assaulting the same victim, increase [the offense level] by 2 levels." Robinson argues that the provision is inapplicable for two reasons.

First, Robinson contends that § 2A6.2(1)(D)(b) was inapplicable because the conduct that resulted in the conviction, which is to say, Robinson's journey to Maine with Rebecca, was not an act of stalking, threatening, harassment, or assault. Whether the offense was an act of stalking, threatening, harassment, or assault is not the question, however, but whether the act "involved . . . a pattern of activity involving" such acts. This language is hardly of crystal clarity, but we conclude that it encompasses the

---

[1]Robinson also contests any application of USSG § 2A6.2(b)(1)(A), which provides an additional two-level enhancement where a violation of the relevant statute involves the violation of a protective order. He contends that to apply the guideline would be to engage in impermissible double-counting, because it would involve counting the violation of the protective order against him for purposes of both conviction under the statute and sentencing under the Guidelines. We need not consider the issue, however, because the district court did not rest its sentencing decision on § 2A6.2(b)(1)(A). It noted instead that the application of § 2A6.2(b)(1)(D) raised the lower end of the Guidelines sentencing range above the statutory maximum, and so mooted the question whether any additional enhancements were warranted.

activity here.  The challenge is to identify a pattern of activity that fits the guideline description, and to determine whether the offense "involves" that pattern.  Robinson's persistent abuse of his wife, consisting of at least the two incidents of assault and the sending of multiple threatening letters, constitutes the proscribed pattern of activity.  The offense involved that pattern, because it consisted of the violation of a protective order whose only purpose was to protect Rebecca from that abusive behavior.

Robinson also argues that the guideline is inapplicable because it contemplates a "victim," and Robinson's wife cannot be considered a victim because, he alleges, she gave her consent to travel with him to Maine.  The district court rightly concluded that this argument is frivolous.  The guideline calls for an enhancement when the charged crime "involved . . . a pattern of activity involving stalking, threatening, harassing, or assaulting the same victim."  USSG § 2A6.2.  As we have just noted, the pattern of activity in question consisted of two incidents in which Robinson assaulted his wife, and more than one instance in which he threatened her.  The question is whether she was the "victim" of the activity which constituted the requisite pattern, and this she plainly was.  The district court was correct to apply a two-level enhancement under USSG § 2A6.2(b)(1)(D).

## B. Acceptance of Responsibility

We have in the past ordinarily reviewed a district court's determination whether a defendant accepted responsibility for clear error, because that determination is a fact-dominated enterprise, and clear error is the standard under which we generally review a district court's findings of fact. See United States v. McLaughlin, 378 F.3d 35, 37-38 (1st Cir. 2004). We have further explained that clear error is the appropriate standard because "[c]redibility and demeanor play a crucial role in determining whether a person is genuinely contrite," and the sentencing judge "has the unique opportunity of observing the defendant . . . and evaluating acceptance of responsibility in a live context against the backdrop of the case as a whole." United States v. Royer, 895 F.2d 28, 29 (1st Cir. 1990).

Before proceeding, we must again consider the effect, if any, of Booker on our review of sentencing determinations and decide whether Booker's holding that sentences will be reviewed for reasonableness affects our standard of review where a defendant challenges the factual findings of a district court. We conclude that nothing in Booker suggests that our review of district court fact-finding need change, despite the Court's excision in that case of 18 U.S.C. § 3742(e) from the U.S. Code, discussed above.

We review fact-finding by a district court for clear error in myriad contexts in both criminal and civil cases. See,

e.g., United States v. McKoy, 428 F.3d 38, 39 (1st Cir. 2005); United States v. Tibolt, 72 F.3d 965, 969 (1st Cir. 1995); Fed. R. Civ. P. 52(a). This approach is supported by the commonsensical recognition that a district court's position is a superior vantage from which to evaluate the many factors that inform a factual determination. We are in only a poor position to reevaluate the district court's assessment of questions of credibility and demeanor, for example, and can see no reason why Booker would change our assessment of the deference due to the district court as the primary finder of fact. Instead, we hold that a sentence will be vacated as unreasonable under Booker if it is predicated on a clearly erroneous view of material facts.

Here, we find no error. While a guilty plea and a truthful account of the conduct constituting an offense are significant evidence of a defendant's acceptance of responsibility, they are not conclusive. See United States v. Hardy, 99 F.3d 1242, 1246 (1st Cir. 1996); USSG § 3E1.1, cmt. n. 3. While the defendant's statement to the court suggested some degree of acceptance of responsibility for the crime he had committed, it also contained assertions inconsistent with such an acceptance. Even more important to the district court's determination, however, was the fact that, while in prison pending sentencing, Robinson wrote a series of threatening letters to his wife, a form of communication that the protective order then in force expressly,

and by Robinson's own acknowledgment, forbade.  The district court thought that Robinson's ongoing violation of the very protective order for whose violation he was then incarcerated was flatly inconsistent with an acceptance of responsibility for the prior violation of that protective order.  That determination appears to us to be utterly supportable, and we therefore find no error in the district court's decision not to reduce Robinson's sentence under USSG § 3E1.1.

### III. Conclusion

For the reasons stated herein, we **<u>affirm</u>** the sentence imposed by the district court.