OPINION EN BANC
BOUDIN, Chief Judge.
A year has now passed since the Supreme Court’s decision in United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), and courts are being asked to review sentences imposed under the post-Booker advisory guidelines regime. See United States v. Pho, 433 F.3d 53 (1st Cir.2006); United States v. Robinson, 433 F.3d 31 (1st Cir.2005). We have heard this case en banc to provide stable guidance in this circuit for the determination and review of post -Booker sentences.
The facts of the present case are generally not in dispute. Cambridge, Massachusetts, police arrested Lenny Jimenez-Bel-tre on drug trafficking charges in March 2000. He pled guilty to distributing cocaine and doing so within 1,000 feet of school property. He was sentenced to two and one-half years of imprisonment and, on March 19, 2002, released and deported to the Dominican Republic.
Without the necessary permission from the Attorney General or Secretary of Homeland Security, 8 U.S.C. § 1326 (2000), Jimenez-Beltre unlawfully re-entered the United States. On October 1, 2003, he was arrested on drug charges (of which he was later convicted) by the Fitchburg, Massachusetts, police. Thereafter, he was indicted under 8 U.S.C. § 1326 by a federal grand jury for illegal re-entry into the United States. On October 20, 2004, he pled guilty to the charge.
The district court held the sentencing hearing on February 15, 2005, just over a month after Booker had been handed down. At sentencing, the district court began, with clarity much appreciated by us, with an explanation that it would first calculate the guideline sentence, then determine whether departures were warranted under the guidelines, and finally determine whether a non-guideline sentence was warranted by the relevant factors set forth in 18 U.S.C. § 3553(a) (2000). The court offered this concise summary:
I’m certainly treating the Guidelines as advisory, not mandatory, but I feel I need to start someplace, and that’s where I’m going to start. I do intend to give them substantial weight, but they *517 don’t have controlling weight; and if there are clearly identified and persuasive reasons why I should not impose a Guidelines sentence, I will consider those and impose a sentence accordingly •
The judge then calculated the guideline sentence. For JimenezABeltre’s crime, the base offense level is eight. U.S.S.G. § 2L.1.2(a). The court added sixteen levels because Jimenez-Beltre had “previously [been] deported ... after ... a conviction for a felony that is ... a drug trafficking offense for which the sentence imposed exceeded 13 months.” Id. § 2L.1.2(b)(1)(A)(i). Three levels were subtracted for acceptance of responsibility, id. § 3El.l(b), making the adjusted offense level twenty-one.
For criminal history, the pre-sentence report assigned Jimenez-Beltre five points, placing him in category III. Jimenez-Beltre asked the district court to depart on the ground that he did not have an extensive criminal history and that the Fitchburg offense had involved a small quantity of drugs. The district court denied the request for a departure, saying that the amount was uncertain but the offense had been a felony and the court deemed the matter to be within the guideline “heartland.”
Jimenez-Beltre also argued that the guideline sentence should not control, saying among other things that “fast-track” federal courts in the Southwest gave lower sentences in comparable cases, that he had already served some period in the custody of state and immigration authorities before being turned over for federal prosecution, and that re-deportation was in itself punishment and would protect the public.
The district court, after calculating the guidelines range and considering the above-described arguments, said that it recognized that the guidelines were only advisory but saw “no clearly identified and persuasive reasons to impose a nonguide-lines sentence.” The guideline range, for level 21 and criminal history category III, was 46 to 57 months. The court sentenced Jimenez-Beltre to 46 months, saying that “a higher sentence is not necessary to achieve the various goals of sentencing.” This appeal followed, primarily urging that the sentence is unreasonable.
At the threshold, we face the government’s position that a sentence within the guidelines is inherently unreviewable on appeal on grounds of “unreasonableness.” The argument is based on the structure of the review provisions of the statute governing appeals from sentences, 18 U.S.C. § 3742(a), and on the analogy to the case law governing review of district court decisions in the pre-Booker era; the case law, it will be recalled, precluded review of a refusal to depart unless the district court misapprehended its authority. See United States v. Ruiz, 536 U.S. 622, 627, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002).
Whatever its logic (a matter on which reasonable people can differ), the government’s position in this court is hopeless. A majority of Justices said explicitly in Booker that sentences would be reviewable for reasonableness whether they fell within or without the guidelines,[1] and for us that is the end of the matter. The government says that this was merely “dicta”; but “considered dicta ... of recent vintage” are effectively binding on us. Rossiter v. Potter, 357 F.3d 26, 31 (1st Cir.2004) (quoting McCoy v. MIT, 950 F.2d 13, 19 (1st Cir.1991)).
*518 Central to the merits of this appeal is the question of what role the advisory guidelines should play in a post-Booker sentence. To begin with the conclusion, the guidelines continue in our view to be an important consideration in sentencing, both in the district court and on appeal, which should be addressed in the first instance by the sentencing judge. We do not find it helpful to talk about the guidelines as “presumptively” controlling or a guidelines sentence as “per se reasonable,” [2] and believe that the district judge’s adroit one-paragraph summary (quoted above) is a more useful compass.
Our conclusion is rooted in both parts of the Booker decision. In holding the mandatory regime unconstitutional, the flaw discerned by the five-Justice majority was that mandatory guidelines created mini-crimes requiring jury findings. Booker, 125 S.Ct. at 750-52. Although making the guidelines “presumptive” or “per se reasonable” does not make them mandatory, it tends in that direction; and anyway terms like “presumptive” and “per se” aré more ambiguous labels than they at first appear.
At the same time, the guidelines cannot be called just “another factor” in the statutory list, 18 U.S.C. § 3553(a) (2000), because they are the only integration of the multiple factors and, with important exceptions, their calculations were based upon the actual sentences of many judges, Booker, 125 S.Ct. at 766-67; 28 U.S.C. § 994(o). The Sentencing Commission is also an expert agency charged by Congress with the task of promulgating guidelines and keeping them up to date. 28 U.S.C. § 994(c). In its remedial opinion, the Supreme Court has stressed the continuing role of the guidelines in promoting uniformity and fairness. Booker, 125 S.Ct. at 757-64.
Yet the guidelines are still generalizations that can point to outcomes that may appear unreasonable to sentencing judges in particular cases. Some of the guidelines in particular cases were not reflections of existing practice but were deliberate deviations or turned tendencies into absolutes. Others have been affected by directions from Congress. See, e.g., Pho, 433 F.3d at 61-63. Booker’s remedial solution makes it possible for courts to impose non-guideline sentences that override the guidelines, subject only to the ultimate requirement of reasonableness.
Accordingly, at sentencing, the district court must continue to “consider the Guidelines ‘sentencing range.’ ” Booker, 125 S.Ct. at 764 (quoting 18 U.S.C. § 3553(a)(4)). In most cases, this will mean that the district court will have to calculate the applicable guidelines range including the resolution of any factual or legal disputes necessary to that calculation — unless they do not matter — before deciding whether to exercise its new-found discretion to impose a non-guidelines sentence. Robinson, 433 F.3d at 35.
In sum, we agree with the district court’s general approach, quoted above, and we find very helpful the district court’s sequential determination of the guideline range, including any proposed departures, followed by the further deter *519 mination whether other factors identified by either side warrant an ultimate sentence above or below the guideline range. To construct a reasonable sentence starting from scratch in every case would defeat any chance at rough equality which remains a congressional objective.
This brings us to Jimenez-Beltre’s detailed objections on appeal, which focus upon the district court’s treatment of various factors cited by Jimenez-Beltre at sentencing as reasons urged for a sentence below the guideline range. To sum up again at the outset, our emphasis in reviewing such claims will be on the provision of a reasoned explanation, a plausible outcome and — where these criteria are met — some deference to different judgments by the district judges on the scene.
Whether the sentence falls inside or outside the applicable guideline range, it is important for us to have the district court’s reasons for its sentence; 18 U.S.C. § 3553(c) so requires for sentences outside the guidelines range (or within it if the range is broad) and this is even more important in the more open-ended post-Booker world. Yet a court’s reasoning can often be inferred by comparing what was argued by the parties or contained in the pre-sentence report with what the judge did.
Assuming that the district court correctly calculates the guidelines range and its reasoning is express or can be discerned, the remaining question on appellate review is one of reasonableness which Booker expressly held to be reviewable. Often, there can be more than one reasonable way of assessing a factor and more than one reasonable result. Assuming a plausible explanation and a defensible overall result, sentencing is the responsibility of the district court.
In this case, Jimenez-Beltre asked the district court for a below-guidelines sentence on several grounds, four of which are pressed on appeal. The first is that a below-guidelines sentence was necessary to avoid the “unwarranted sentencing disparity,” 18 U.S.C. § 3553(a)(6), between those districts that have so-called “fast-track” systems for prosecuting and sentencing illegally re-entering aliens and other districts, like Massachusetts, that do not.[3]
This certainly permits disparities but they are the result of a congressional choice made for prudential reasons, implicitly qualifying the general aim of equality. The impact is probably more modest than the decision of a United States Attorney, in a district with a heavy case load, to forgo entirely some prosecutions that would routinely be brought in other districts. Whether it would even be permissible to give a lower sentence on the ground sought is itself an open question. Martinez-Flores, 428 F.3d at 30 n. 3.
In any event, the district court ruled that the defendant had not furnished a factual basis for assessing the extent of the disparities or provided a reason why to take them into account. As with departures, the proponent of a factor that would work in the proponent’s favor has to provide the basis to support it. United States v. Derbes, 369 F.3d 579, 582 (1st Cir.2004). In declining to alter the sentence on this ground, the district court did not act unreasonably.
Jimenez-Beltre’s second argument for a lower sentence was based on his *520 claim that his prior, predicate drug conviction involved only two bags of cocaine and was therefore “minor” compared to larger quantities handled by other alien drug dealers. The district court did not credit Jimenez-Beltre’s (unsworn) statement as to the amount and concluded — permissibly in our view — that it was enough to adhere to the guidelines sentence that the predicate conviction was for felony drug dealing and carried a sentence of the requisite length.
Next, Jimenez-Beltre asked the district court to adjust the sentence to account for the time that he spent in state custody and that of the federal Immigration and Customs Enforcement (“ICE”) authorities. The district court quite reasonably disregarded the time spent in state custody — apparently five weeks; Massachusetts, a “separate sovereign” (as the district court pointed out), was holding Jimenez-Beltre in aid of new drug charge, not illegal re-entry!
As for the time Jimenez-Beltre spent in ICE custody, it amounted to 30 days, and he was sentenced at the bottom of the guidelines range whose breadth was 11 months. Jimenez-Beltre does not claim that he was legally entitled to an automatic credit under the guidelines. The district court was uncertain whether the 30-day period was an appropriate basis to adjust the sentence, decided not to do so and — we conclude — did not act unreasonably.
Next, Jimenez-Beltre says that the district court should have given a non-guidelines sentence to account fpr his immediate detention and likely future deportation once released from prison. This, said Jimenez-Beltre, made a normal guideline sentence unnecessary for deterrence or public protection and was a pertinent factor under 18 Ú.S.C. § 3553(a)(2). Framed as a generic argument, this is unpersuasive on its face.
The crime in question — re-entry after deportation — is ordinarily going to be committed by persons who will be deported after their sentences have been served. The guideline sentencing range was likely predicated on this understanding. And Jimenez-Beltre, who himself did re-enter after deportation, is hardly in a good position to argue for a shorter sentence on the ground that another deportation of him will protect the public adequately against yet another repetition.
Finally — and independent of the reasonableness of his sentence — Jimenez-Beltre argues that, under the Sixth Amendment, the fact and nature of his prior state conviction should have been proved to a jury beyond a reasonable doubt. The Supreme Court held to the contrary in Almendarez-Torres v. United States, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), but Jimenez-Beltre contends that Almendarez-Torres has been “eviscerated” by the Supreme Court’s more recent decisions in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), Booker, and Shepard v. United States, 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005).
Whatever the continuing viability of Al-mendarez-Torres, we have previously held that we are bound to follow it until it is expressly overruled, United States v. Ivery, 427 F.3d 69, 75 (1st Cir.2005), and we see no reason to revisit that conclusion here. As it happens, Jimenez-Beltre admitted his prior conviction which, under Booker and Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), would avoid the constitutional issue in this case even if Almendarez-Torres were to be overturned.

Affirmed.

. Justice Breyer’s remedial decision for five Justices is unqualified on this point, Booker, 125 S.Ct. at 765, and Justice Scalia's dissent agrees that this is what is entailed by the majority position, id. at 792-93.

. Several circuits have used the presumption language. United States v. Mykytiuk, 415 F.3d 606, 608 (7th Cir.2005); United States v. Tobacco, 428 F.3d 1148, 1151 (8th Cir.2005); United States v. Williams, 436 F.3d 706, 2006 WL 224067, at. *1 (6th Cir. Jan.31, 2006); United States v. Green, 436 F.3d 449, 2006 WL 267217, at *5 (4th Cir., Feb.6, 2006). The per se label has also been urged, United States v. Webb, 403 F.3d 373, 385 (6th Cir.2005) (Kennedy, C.J., concurring in part and dissenting in part), but has thus far been rejected, Webb, 403 F.3d at 385 n. 9. United States v. Talley, 431 F.3d 784, 786-87 (11th Cir.2005); United States v. Cunningham, 429 F.3d 673, 676 (7th Cir.2005).