[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 28, 2006
THOMAS K. KAHN
CLERK

No. 05-15326
Non-Argument Calendar

_____

D. C. Docket No. 05-10005-CR-KMM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSE LUIS GONZALEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(June 28, 2006)**

Before TJOFLAT, CARNES and FAY, Circuit Judges.

PER CURIAM:

Jose Luis Gonzalez appeals his 12-month sentence, imposed after he pled guilty pursuant to an agreement to a misdemeanor count of conspiracy to smuggle aliens, in violation of 18 U.S.C. § 371. On appeal, he argues that the district court erred by failing explicitly to acknowledge that it had considered the sentencing factors set forth at 18 U.S.C. § 3553(a) and additionally imposed an unreasonable sentence. For the reasons set forth more fully below, we affirm.

At the plea hearing, the court clarified that Gonzalez was charged with a misdemeanor and understood that he faced up to one year in prison. The government's factual statement, to which Gonzalez agreed, was that Gonzalez called his wife on December 5, 2004, and indicated that he and approximately 20 others were in a boat that was sinking at sea. Gonzalez gave his coordinates, and his wife contacted the U.S. Coast Guard, which responded and located Gonzalez's vessel. The vessel was found to contain 24 Cuban nationals, as well as 2 U.S. parolees, one of whom was Gonzalez. Gonzalez gave a statement, indicating that he had gone to Cuba to pick up the wife of one of the other defendants in the case, but, when they arrived in Cuba, a number of people had learned about the planned trip, and, despite Gonzalez's protests, these people boarded the vessel. Gonzalez admitted his guilt, and his plea was accepted.

The presentence investigation report (PSI) set Gonzalez's base offense level

2

at 12, pursuant to U.S.S.G. § 2L1.1(a)(2). A 6-level enhancement was added, pursuant to § 2L1.1(b)(2)(B), because Gonzalez had smuggled between 24 and 100 unlawful aliens. Another two levels were added because the offense involved the intentional or reckless creation of a substantial risk of death or serious bodily injury to another person, U.S.S.G. § 2L1.1(b)(5). Next, two more levels were added because Gonzalez had used special skill—boat driving—to facilitate the commission of the offense, U.S.S.G. § 3B1.3. Finally, Gonzalez received a 3-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1, for a total offense level of 19. With no prior criminal history, Gonzalez was placed in criminal history category I, which, at offense level 19, provided for a recommended sentencing range of 30 to 37 months' imprisonment. However, the statutory maximum sentence was 12 months' imprisonment, and, therefore, the PSI indicated that the guideline range was 12 months.

At the sentencing hearing, the court, without objection from the government, granted Gonzalez a three-level reduction because the offense was not committed for profit. The court also granted Gonzalez's objection to the six-level enhancement for the number of aliens involved, reducing the enhancement to only a three-level enhancement. At that point, Gonzalez indicated that, ultimately, he believed that his total offense level should be 10, which would provide for a

3

sentencing range of 6 to 12 months' imprisonment. As to Gonzalez's objection to the enhancement for reckless creation of a substantial risk of death or serious bodily injury, the court was apprehensive because there were not enough life vests on the boat for everyone who boarded, but sustained Gonzalez's objection anyway, apparently because the court did not believe that it would have an impact on the actual sentence imposed. Finally, as to the "special skill" enhancement, the court sustained Gonzalez's objection after being reassured that Gonzalez's offense level would remain at 6 to 12 months' imprisonment,.

Gonzalez then requested a sentence at the low end of the guideline range or lower, arguing that he had never had any contact with the criminal justice system since arriving in the United States in 1996 and had demonstrated an exemplary work record, using his electrical degree to start his own business. Gonzalez noted that his family was very close and suggested that he was eligible for a "straight probation sentence" or a "lengthy term of home confinement coupled with community service," as his electrical services could be provided to needy charities. Finally, Gonzalez stated that the circumstances of his case—going to Cuba to pick up a relative and ending up with additional people boarding his boat contrary to his directions—did not warrant a sentence of incarceration.

The court then asked whether it was mistaken in having read, 2 weeks

earlier, that some 30 people who had left Cuba still had not been located, and Gonzalez admitted that the court was correct. Gonzalez stated, however, that his case did not involve traveling to Cuba to retrieve 30 people in exchange for money, but instead involved him traveling to Cuba to pick up his nephew's wife. The court indicated that whether Gonzalez went to Cuba seeking a profit was beside the point, but, in any case, the sentencing range that Gonzalez requested was 6 to 12 months, and, in the court's opinion, any sentence that it imposed within that range would be reasonable.

Next, the court expressed that it was "curious" as to why the government had chosen to charge Gonzalez with only a misdemeanor, given the number of people involved, because the court believed that it was "inherently dangerous to engage in this type of activity and particularly so when you're bringing people without the proper safety equipment." The court clarified that it was not interpreting the guidelines, but just questioning "from a common sense standpoint . . . why the government charged this with a misdemeanor." The court subsequently sentenced Gonzalez to 12 months' imprisonment, the statutory maximum and highest available guideline sentence. Gonzalez objected that the sentence was not reasonable under the circumstances of the case. The court responded that the sentence was "within the guidelines," to which Gonzalez agreed.

5

On appeal, Gonzalez argues that he "did not receive a fair sentencing process or a reasonable sentence from the district court for the crime he committed." Gonzalez argues that the district court failed to consider the § 3553(a) sentencing factors, gave undue weight to a newspaper article, and imposed an unreasonable statutory maximum sentence to a first-time offender. Specifically, Gonzalez argues that the district court was required to, at the very least, consider all of the § 3553(a) factors, not just the guidelines, and the district court's sentence here was unreasonable because it neglected to consider factors other than the guideline range. He further argues that a sentence within the guideline range is not per se reasonable, and his 12-month sentence, which admittedly was within the guideline range, is unreasonable because: (1) nothing in the record shows that the court considered the § 3553(a) factors before imposing a sentence; (2) the court gave undue weight to an incident reported in the local press, at the expense of the other § 3553(a) factors; and (3) his criminal conduct demonstrated a lack of intent to do anything more than bring one person to the United States. Gonzalez notes that his codefendant also received a one-year sentence, but argues that his codefendant was more culpable because he actively recruited, planned, and financed the trip. Finally, he argues that his sentence was greater than necessary to achieve § 3553(a)'s sentencing goals.

Where a defendant challenges his overall sentence, we review for unreasonableness. United States v. Winingear, 422 F.3d 1241, 1244 (11th Cir. 2005); United States v. Booker, 543 U.S. 220, 261-62, 125 S.Ct. 738, 765-66, 160 L.Ed.2d 621 (2005) (holding that appellate courts review sentences for unreasonableness in light of the § 3553(a) factors). We have held that "nothing in Booker or elsewhere requires the district court to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors." United States v. Scott, 426 F.3d 1324, 1329 (11th Cir. 2005). An acknowledgment that the district court has considered a defendant's arguments and the § 3553(a) factors is sufficient under Booker. Id.

At the time of Gonzalez's sentencing on September 8, 2005, the Supreme Court had issued its ruling in Booker, rendering the guidelines advisory only, and, therefore, the district court, while required to consult and properly calculate the guideline range, was not bound by the recommended range of 6 to 12 months. See Booker, 543 U.S. at 259-60, 125 S.Ct. at 764-65 (excising the mandatory application of the guidelines); United States v. Crawford, 407 F.3d 1174, 1178 (11th Cir. 2005) (holding that, although the guidelines are advisory after Booker, the district court is still bound to consult them and accurately calculate the sentencing range). We have rejected the notion that a sentence within the

7

guidelines is <u>per se</u> reasonable, although "the use of the Guidelines remains central to the sentencing process." <u>United States v. Talley</u>, 431 F.3d 784, 787 (11th Cir. 2005). We have further stated that, "there is a range of reasonable sentences from which the district court may choose, and when the district court imposes a sentence within the advisory Guidelines range, we ordinarily will expect that choice to be a reasonable one." <u>Id.</u> at 788.

Turning first to the § 3553(a) factors, a review of the sentencing transcript reveals that the district court did not, at any point, so much as mention or acknowledge that the § 3553(a) factors existed or that it had considered them. The only things explicitly referenced by the district court in this case were the guidelines and the PSI. Even during its pronouncement of the sentence, the court did not indicate whether it had considered other § 3553(a) factors. This does not appear to be in explicit compliance with our holding in <u>Scott</u> that a district court meets its post-<u>Booker</u> sentencing obligations by "explicitly" acknowledging that it had considered a defendant's arguments at sentencing and that it had considered the factors set forth in § 3553(a). <u>See</u> <u>Scott</u>, 426 F.3d at 1330. It also does not stand on all fours with our decision in <u>Talley</u>, where we held that the district court properly considered the § 3553(a) factors when it stated on the record that "[b]ased on all the facts and circumstances of this case, [it thought] that the guidelines do

8

produce a fair and reasonable sentence considering the factors set forth in 18, section 3553(a)" and proceeded to provide further explanation for its sentence. Talley, 431 F.3d at 786.

While we have not had occasion to consider the case where a district court altogether fails to mention that it had considered the § 3553(a) factors, other circuits, such as the Second Circuit, have presumed, "in the absence of record evidence suggesting otherwise, that a sentencing judge has faithfully discharged her duty to consider the statutory factors." United States v. Fernandez, 443 F.3d 19, 30 (2d Cir. 2006). "In other words, no 'robotic incantations' are required to prove the fact of consideration." Id. Indeed, as the First Circuit noted, "a court's reasoning can often be inferred by comparing what was argued by the parties or contained in the pre-sentence report with what the judge did." United States v. Jimenez-Beltre, 440 F.3d 514, 519 (1st Cir. 2006). The Sixth Circuit similarly has held that a district court's failure explicitly to consider the § 3553(a) factors is not error, absent some indication that the court affirmatively ignored the factors. See United States v. Williams, 436 F.3d 706, 708 (6th Cir. 2006).

We agree with the reasoning of our sister circuits and hold that district courts do not automatically err by explicitly failing to state that they have considered the § 3553(a) factors at some point during sentencing proceedings. In many cases,

9

such as this one, as discussed below, the district court's reasons for imposing a sentence are clear from the record and in compliance with the statutory requirements of § 3553(a).[1]  Absent an affirmative indication that the factors were not considered, we may presume that district courts are following the law.  See Fernandez, 446 F.3d at 30.

Turning to the instant case, the district court's questions and comments, as well as the arguments made by Gonzalez concerning the appropriate sentence, show that the court, whether explicitly or not, considered several § 3553(a) factors when determining an appropriate sentence.  First, the court heard Gonzalez's argument that he was a first-time offender with no other encounters with the justice system and a reliable worker who had started his own electrical business.  The court also heard evidence of Gonzalez's close family ties, and heard Gonzalez argue that he could be eligible for probation or home detention with community service.  These two factors are covered under the § 3553(a) factors as history and characteristics of the defendant, as well as the types of sentences available.  See 18 U.S.C. § 3553(a)(1), (3).

---

[1] We do note, however, as did the Second Circuit, that district courts are encouraged to facilitate review by providing complete and detailed explanations regarding their sentencing decisions.  Fernandez, 446 F.3d at 30 n.8.  Nothing in this opinion should be read as dispensing with the requirement that the § 3553(a) factors be discussed at sentencing.  The failure to explicitly mention a specific factor, however, will not automatically be considered an error requiring a remand.

However, the court was more concerned that the seriousness of the offense was being understated by both Gonzalez and the government, and explicitly questioned Gonzalez about a recent incident in which 30 Cubans left Cuba—apparently by boat—and had not been found. The court also found that, whether or not Gonzalez received an enhancement for reckless endangerment, his conduct was "inherently dangerous" and "particularly so when you're bringing people without the proper safety equipment," as Gonzalez had admitted. The seriousness of the offense is a permissible ground on which to base a sentence, as is deterrence of future criminal conduct. See 18 U.S.C. §§ 3553(a)(2)(A)-(B).

While Gonzalez argued that he never intended to transport 25 people without an adequate number of life preservers, Gonzalez ignores the fact that he consciously decided to transport these people after they boarded his boat. Whether or not that was his intent when he traveled to Cuba is irrelevant—as captain of the boat, he could have decided not to travel to Florida with the 25 additional passengers, but instead, he decided to make the trip, confronting a risk that the boat would not be able to make the trip. That risk materialized, and, according to the PSI, Gonzalez telephoned his wife when the boat began to take on water, and she contacted the Coast Guard, which managed to rescue all of the passengers just before the boat sank. On this record, we cannot say that the district court, which

11

imposed the 12-month maximum sentence for a misdemeanor, fashioned an unreasonable sentence. Cf. United States v. Eldick, 443 F.3d 783, 790 (11th Cir. 2006) (affirming as reasonable a district court's imposition of consecutive statutory maximum sentences, in light of the seriousness of the defendant's offense).

Based on the foregoing, we conclude that the district court's failure explicitly to mention that it had considered the § 3553(a) factors was not error because the record sufficiently demonstrated that the court considered the PSI, as well as the arguments made by Gonzalez, and its questions and comments indicate that, explicitly or not, the § 3553(a) factors were applied. Moreover, we cannot say, based on this record, that Gonzalez's 12-month sentence was unreasonable. We, therefore, affirm.

**AFFIRMED.**